## STATE OF MARYLAND *v.* DAVID STEWART.

*Home Rule Amendment—Baltimore City—Regulation of Traffic—Public Local Law—What Constitutes.*

Under Constitution, art. 11A, known as the Home Rule Amendment, which forbids the General Assembly to enact a public local law on any subject covered by express powers granted to Baltimore City, Act of 1924, ch. 436, empowering the police commissioner of said city to make rules and regulations for the control of vehicles and vehicle traffic within the city, is invalid, the city charter having conferred upon the Mayor and City Council power to regulate the use of streets and highways by foot passengers and vehicles.                    pp. 422-425

Said act cannot be upheld as a repeal of the special grant of power to the Mayor and City Council, within the provision of such article of the Constitution, which gives the General Assembly power to extend, modify, amend, or repeal such a grant.

p. 424

If the General Assembly concludes that the grant of powers to the city contains a subject upon which the General Assembly, and not the city authorities, should have authority to legislate, it can accomplish this only by amending or repealing the act granting and delineating the powers.                    p. 424

Act of 1924, ch. 436, which empowers the police commissioner of Baltimore City to make regulations for vehicle traffic within the boundaries of the city, is not a public general rather than a public local law, by reason of the fact that it purports to add a new section to an article of the Public General Laws, that the police commissioner is appointed by the Governor, or that citizens of other parts of the state are subjected to such regulations while using the streets of the city, the subject-matter being exclusively local.                    pp. 426, 427

*Decided March 3rd, 1927.*

Appeal from the Criminal Court of Baltimore City (O'DUNNE, J.).

Criminal proceeding against David Stewart. From a judgment sustaining a demurrer to the indictment, the State appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Willis R. Jones, Assistant Attorney General,* and *Eugene A. Edgett,* with whom were *Thomas H. Robinson, Attorney General,* and *Herbert R. O'Conor, State's Attorney for Baltimore City,* on the brief, for the State.

*Arthur W. Machen, Jr.,* with whom was *J. Britain Winter* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

On July 16th, 1926, the appellee was indicted by the grand jury of Baltimore City for violation of the parking regulations made and promulgated by the police commissioner of Baltimore City, with the approval of the mayor, said regulations having been made under the authority of chapter 436 of the Acts of 1924 of the General Assembly of Maryland. A demurrer was interposed to the indictment and sustained by the lower court. From this action the appeal is taken.

The indictment alleges that Charles D. Gaither, being then the police commissioner of Baltimore City, did, in pursuance of the power conferred upon him by law, and particularly by chapter 436 of the Acts of 1924, authorizing, empowering, and directing the said police commissioner to make rules and regulations for the control and conduct of all vehicles and vehicular traffic on the streets, avenues, alleys, and highways within the City of Baltimore, make certain rules and regulations, one of which being known as section 8 of article 1, and providing:

"Except on streets as mentioned in sections 3, 4, 6 and 11 of this article, vehicles will be permitted to park within the central business district between the hours of nine-thirty (9:30) A. M. and six (6:00) P. M., provided they do not stand for a longer time than two (2) hours continuously in

any one block; and provided further that on Sundays, legal holidays, and Saturdays after two (2:00) P. M., unlimited parking will be allowed except on streets described in section 11 of this article; and provided further that parking at night shall be subject to restrictions as mentioned in section 5, article 2 of these regulations."

"And that David Stewart, late of said city, on the seventh day of June, in the year of our Lord nineteen hundred and twenty-six, at the city aforesaid, in violation of the rule and regulation aforesaid, unlawfully did permit to be parked and to stand within the central business district between the hours of nine-thirty A. M. and six P. M. for a longer time than two hours continuously, to wit, six hours, in a certain block, to wit, Mulberry Street, between Calvert Street and Saint Paul Place, in said city the said seventh day of June in said year not being then and there a Sunday, legal holiday, or Saturday, contrary to the rule and regulation aforesaid, contrary to the form of the Act of Assembly in such case made and provided and against the peace, government and dignity of the State."

By the demurrer to the indictment the constitutionality of chapter 436 of the Acts of the General Assembly of Maryland of 1924 was attacked, and three reasons were assigned for the unconstitutionality of this act: First, that it is in conflict with article 11A of the Constitution of Maryland; second, because chapter 436 of the Acts of 1924 is an unconstitutional delegation of legislative power to the police commissioner and mayor, and, third, because the said act is in conflict with the Constitution of this State, and with that clause of the Fourteenth Amendment to the Constitution of the United States, which provides that no state shall deny to any person within its jurisdiction equal protection of the laws, in that said act confers arbitrary and unlimited powers on the police commissioner with the approval of the mayor, and permits said police commissioner with the approval of the mayor to prohibit the parking of automobiles arbitrarily and upon his mere whim and without fixing any standards by which such action is to be guided.

The trial court sustained the demurrer upon the first ground, to wit, that the Act of 1924, chapter 436, is in conflict with article 11A of the Constitution of Maryland. Having reached a conclusion in harmony with that decision, which necessitates the striking down as unconstitutional of the act of the legislature in question, it is unnecessary to pass upon the other grounds urged by the appellee for its invalidity.

Article 11A of the Constitution of Maryland, known as the Home Rule Amendment, was adopted by a vote of the people of the state in November, 1915, pursuant to the provisions of chapter 416 of the Acts of the General Assembly of 1914. The wisdom of incorporating in the organic law of the state such provisions as are contained in this article had been urged for a number of years prior to its adoption, the reasons assigned by its proponents being that a larger measure of home rule be secured to the people of the respective political subdivisions of the state in matters of purely local concern, in order that there should be the fullest measure of local self-government, and that these local questions should thus be withdrawn from consideration by the General Assembly, leaving that body more time to consider and pass upon general legislation, and to prevent the passage of such legislation from being influenced by what is popularly known as "log-rolling"; that is, by influencing the attitude and vote of members of the General Assembly upon proposed general laws by threatening the defeat or promising the support of local legislation in which a particular member might be peculiarly interested. The portions of this amendment affecting this controversy are found in sections 2 and 4 of article 11A, which are:

"Section 2: The General Assembly at its first session after the adoption of this amendment shall by public general law provide a grant of express powers for such county or counties as may thereafter form a charter under the provisions of this article. Such express powers granted to the counties and the powers heretofore granted to the City of

Baltimore, as set forth in article 4, section 6, Public Local Laws of Maryland, shall not be enlarged or extended by any charter formed under the provisions of this article, but such powers may be extended, modified, amended or repealed by the General Assembly."

"Section 4: From and after the adoption of a charter under the provisions of this article by the City of Baltimore or any county of this state, no public local law shall be enacted by the General Assembly for said city or county on any subject covered by express powers granted as above provided. Any law so drawn as to apply to two or more of the geographical subdivisions of this state shall not be deemed a local law, within the meaning of this act. The term 'geographical subdivision' herein used shall be taken to mean the City of Baltimore or any of the counties of this state."

From an examination of these sections it is apparent that the powers granted by the Legislature to the City of Baltimore, contained in article 4, section 6, of the Public Local Laws of Maryland, under this amendment are to be exercised by the City of Baltimore, and that there is an express prohibition in section 4 against the enactment by the General Assembly of a public local law on any subject covered by express powers granted to Baltimore City. This article empowers the General Assembly to designate the subjects in respect to which the city or counties may legislate locally. In other words, this article of the Constitution itself does not grant the power to Baltimore City to legislate locally on all subjects, but only in respect to such subjects as are delegated to it in the legislative grant of powers. That is to say, the General Assembly has full power to designate the subjects in respect to which the power of legislation is delegated to the local authorities, but reserving to the Legislature the power and authority to enlarge, repeal or change the grant of powers theretofore made. While the Legislature has its reserved right to enlarge, diminish or change the grant of powers, so long as the granted powers remain un-

changed, the field of local legislation in respect to those sub-
jects defined in the grant of powers is exclusively in the local
authorities, and the Legislature is forbidden to enact public
local laws upon such subjects. If the General Assembly,
in its grant of powers to Baltimore City, subsequently con-
cludes that the grant of powers contained a subject upon
which the General Assembly should have authority to legis-
late, and not the city authorities, it can only accomplish this
by amending or repealing the act granting and delineating
the powers. The Legislature has the power to describe the
field within which the local authorities may legislate, but
having once done this, it cannot restrict or limit this field
of legislation without changing its boundaries. The legis-
lation in respect to the subjects contained in the granted
powers is therefore committed exclusively to the local author-
ities and denied to the General Assembly, so long as the
grant of powers remained unchanged. Any other interpre-
tation would render the provisions of article 11A meaning-
less, and result in nullifying the purpose sought to be accom-
plished by its adoption. If the Legislature could change the
grant of power by the simple expedient of passing an act in
conflict with the legislation of the local authorities, it would
result in the complete frustration of the object of the amend-
ment. The grant of powers committed by the General As-
sembly to the Mayor and City Council of Baltimore City is
contained in article 4 of the Public Local Laws, now the
charter of Baltimore City. It is admitted that at the time
of the passage of the act now under consideration, subsection
26g of section 6 of the city charter was in full force and
effect, and that this section conferred upon the Mayor and
City Council power "to regulate the use of streets, high-
ways, roads, public places and sidewalks by foot passengers,
animals, vehicles, cars, motors and locomotives, and prevent
encroachment thereon and obstruction to the same." This
being true, it is clear that by chapter 436 of the Acts of
1924 the Legislature was attempting to legislate upon a
subject contained in the special grant of powers to the city.

This is also admitted, but it is contended by the appellant that, under the provisions of section 2 of article 11A, whereby the General Assembly is given the power to extend, modify, amend, or repeal the special grant of powers, the Act of 1924 is, in effect, a repeal of the power before granted to the city, contained in subsection 26g of section 6 of the city charter. For the reasons already given, we are of the opinion that this contention is unsound. The position is also taken that chapter 436, now under consideration, is not a public local law. But in our opinion this contention is likewise untenable. It is true that the act purports to add a new section to article 56 of the Public General Laws, title "Licenses," subtitle "Motor Vehicles," and that its provisions authorize, empower and direct the police commissioner, who is appointed by the Governor, to make rules and regulations for the control and conduct of all vehicles and vehicular traffic on the streets, avenues, alleys and highways within the City of Baltimore. This, however, does not constitute the act a public general rather than a public local law. The subject-matter is exclusively local to Baltimore City, and the mere form which the enactment has taken, that of an amendment to a public general law, is not controlling. It is the subject-matter and substance, rather than its designation or form, which is conclusive. Otherwise any law could be removed from the domain of public local laws by the mere act of the Legislature in calling it an amendment to a public general law. If such could be done in the present case, the Legislature could, by such a device, evade the constitutional prohibition in respect to local legislation. *Bradshaw v. Langford,* 73 Md. 428; *Gaither v. Jackson,* 147 Md. 655. In the latter case this Court said: "That the mere designation of a law as a local law or its treatment as such by the General Assembly does not make it a local law for all purposes, is illustrated in the case of *Bradshaw v. Langford,* 73 Md. 428."

Neither does the delegation of the authority and power to make these regulations, to an officer appointed by the Gov-

ernor, change its status as a public local law. The enforcement of the laws local to Baltimore City is committed to the police commissioner, in the execution of the police power enjoyed by the city, and the mere fact that the designation of its chief police officer is made by the Governor of the state, rather than by the city authorities, does not change the character of the law providing for the regulation of the traffic upon the streets and highways of the city, so as to make it a general rather than a local law.

In the case of *State, ex rel. Webster, v. County Commissioners,* 29 Md. 516, this Court, speaking through Judge Alvey, said: "The special laws contemplated by the Constitution are those that provide for individual cases. Local laws * * * on the other hand, are applicable to all persons and are distinguished from the public general laws only in this, that they are confined in their operation to certain prescribed or definite territorial limits, and the violation must, in the nature of things, be local."

The above is true, without regard to whether the individual who is to execute and enforce the law is appointed by the Governor or by the local authorities. The operation of the regulations, authorized by this act to be made by the police commissioner, is confined and limited by the territorial boundaries of Baltimore City, and only those who have occasion to use the streets and highways of the city are subject to its provisions, and then only during such time as they are so using them; and the fact that citizens of other parts of the state, or outside of the state, are subjected to these regulations while using the streets and highways of Baltimore City, does not change its status as a local law.

Entertaining the views herein expressed, we hold that chapter 436 of the Acts of the General Assembly of 1924 is in conflict with the provisions of article 11A of the State Constitution, and therefore void.

*Judgment affirmed, with costs.*