AUGUST A. DENHARD *v.* MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.

[No. 9, October Term, 1934.]

*Decided June 14th, 1934.*

The cause having been advanced for the purpose of argument to the April Term, was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Wirt A. Duvall, Jr.*, for the appellant.

*Paul F. Due, Deputy City Solicitor*, with whom was *R. E. Lee Marshall, City Solicitor*, on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

In the capacity of taxpayer, the appellant sued for an injunction to prevent the Mayor and City Council of Baltimore, the board of estimates, and the appeal tax court of the city, from acting under Ordinance No. 595, passed in pursuance of chapter 264 of the Acts of 1933, providing for the creation of a bureau of assessment to exercise the powers and duties previously committed to the appeal tax court in relation to the assessment of property for taxation; the latter body being thereafter invested only with appellate functions. The ordinance and act are both challenged on the ground that they are in violation of the Home Rule Amendment to the State Constitution. The appeal is from a decree by which the validity of the disputed enactments was sustained.

It is the appellant's contention that the reorganization of the appeal tax court affects the form of the city government, and can be accomplished only by a charter amendment adopted by popular vote.

The Home Rule Amendment (Const. art. 11A) provides that a charter for Baltimore City or for any county

adopted under its terms "shall become the law of said City or County, subject only to the Constitution and Public General Laws of this State" (section 1) ; that the express powers granted to the City of Baltimore "as set forth in Article 4, Section 6, Public Local Laws of Maryland, shall not be enlarged or extended by any charter formed under the provisions of this Article, but such powers may be extended, modified, amended or repealed by the General Assembly" (section 2) ; that, after the adoption of a charter by the city, or by any county, the Mayor and City Council of Baltimore, or the county council, "subject to the Constitution and Public General Laws of this State, shall have full power to enact local laws of said City or County including the power to repeal or amend local laws of said city or county enacted by the General Assembly, upon all matters covered by the express powers granted as above provided" (section 3) ; that after the adoption of a charter under the Home Rule Amendment, "no public local law shall be enacted by the General Assembly for said City or County on any subject covered by express powers granted as above provided" (section 4) ; that amendments to any charter adopted by the City of Baltimore or any county may be proposed by resolution of the municipal legislative body, or by petition of a specified proportion of the registered voters, and shall be submitted at the next general or congressional election, and shall become a part of the charter if approved by a majority of the votes cast upon the proposal (section 5) ; and that the preexisting powers of the General Assembly to prescribe the number, compensation, powers, and duties of county commissioners, and the qualifications, compensation, powers, and duties of the Mayor and the City Council of Baltimore, and the number of members to compose the City Council, should be transferred to the voters of a county or the city when adopting or amending a charter as article 11A provides (section 6).

The chancellor's opinion was, in part, as follows: "It is to be noted that the authority conferred upon the

municipality by section 1 of article 11A was the power to adopt a 'charter or form of government for said City,' subject only to the Constitution and Public General Laws of the State. Within the limits of the express powers granted to the municipality by article 4, section 6, Public Local Laws of Maryland [1930], the municipal legislative body, provided by the charter adopted, was given full power to enact local laws for the city, and the General Assembly of the State was prevented from passing a public local law on any subject covered by the express powers granted to the municipality. The Assembly could, however, enlarge, diminish or change the express powers of the city, and could pass, alter or repeal general state laws on the subjects included within those municipal powers. * * * Local legislation not within the express powers of the municipality and general state laws can be passed only by the State Legislature. The charter is also subject to the Public General Laws of the State, and in the event of any conflict the Public General Laws must prevail. * * *" After stating that the act and ordinance in question relate to the assessment and classification of property as a basis of state and city taxation, and that to the extent of the valuation for state purposes it is undeniably a subject of public general legislation, the opinion referred to article 15 of the Declaration of Rights, directing the General Assembly, by uniform rules, to provide for the assessment of property for taxation, and to section 5 of article 81 of the Code of Public General Laws (Supp. 1929), providing that all ordinary state, county, and city taxes shall be levied upon assessments made in conformity with that article. It was therefore concluded that the assessment of property in Baltimore City for the purposes of state taxation is not a proper subject of legislation by the city within the purview of article 11A of the State Constitution.

With that conclusion we are in accord. It is amply supported by the considerations to which the chancellor referred and by decisions of this court construing and applying the provisions of the home rule amendment.

The recent case of *Baltimore v. Fuget,* 164 Md. 335, 165 A. 618, was concerned with a question analogous to the one here presented. In that case the Act of 1929, ch. 401, and the Act of 1931, ch. 115, modifying the system of "mothers' relief" in Baltimore City, were disputed as being in contravention of the city's alleged exclusive right under the Home Rule Amendment to legislate upon that subject. Prior to the adoption of that constitutional amendment, the general statute relating to "mothers' relief" provided that in Baltimore City the system should be administered by a board appointed by the mayor for that specific purpose, unless the mayor and city council, in their discretion, should impose the duty upon the supervisors of city charities, an existing municipal agency. The Act of 1929 withdrew the power to appoint a special board for the administration of the "mothers' relief" system, and definitely charged the performance of that duty upon the supervisors of city charities, at the same time increasing the rate of taxes required to be levied for such relief. The Act of 1931 further raised the tax rate for that purpose. In the opinion delivered for the court by Judge Pattison, it was said (page 344 of 164 Md., 165 A. 618, 621): "It is conceded by the city that the act is a public general law, so far as it required the city and the counties of the state to levy upon the property in their respective jurisdictions for the creation of a fund to be used in carrying out the purpose and object of the act; but it contends that it is a public local and not a public general law in respect to the agency to be used in the accomplishment of its object and purpose, inasmuch as the agency to be employed in the city differs from that in the counties. This contention of the city we cannot adopt. The substantial legislation contained in this act is the requirement that the city and the counties of the state shall levy upon the property in their respective jurisdictions for the creation of a fund to be used for the purpose and object therein stated. The fact that the agency to be used in the city is different from the one to be employed in the counties, where gov-

ernment and other conditions differ, does not, we think, warrant the conclusion that the Act of 1929 as amended is not a public general law."

In *Ness v. Baltimore,* 162 Md. 529, 160 A. 8, chapter 287 of the Acts of 1931, enabling the Mayor and City Council of Baltimore to regulate Sunday observance, was held not invalid as an attempt by the Legislature, in violation of the Home Rule Amendment, to pass a local law upon a subject within the scope of the city's legislative authority under its charter, since the act merely exempted the police power of the city from the restrictions of the public general law on that subject. Chief Judge Bond, speaking for the court in that case, said (pp. 534, 535 of 162 Md., 160 A. 8, 10),: "Considering the act of assembly as an attempt at enlargement or extension of the powers of the city, it is contended that it is invalid because it has not conformed to the limits imposed upon legislative action in the field of local law by this Home Rule Amendment to the Constitution (article 11A). As this court had occasion to declare in *State v. Stewart,* 152 Md. 419, 137 A. 39, once the city had accepted a charter under that amendment, the General Assembly could no longer pass local laws upon subjects included within the powers specified in the charter as those to be exercised by the city, but could only enlarge, diminish, or change the grants of such powers. It could not share one of the granted fields of local law with the city, but could only change the right to those fields or parts of them, as between the State and the city. * * * It is to be borne in mind that the General Assembly has under the Home Rule Amendment two powers, the exercise of which may affect the charter powers of the city. It has reserved to it that just described, the power to enlarge, diminish, or change the granted powers over local law specified in the charter, and it has reserved to it complete power to pass, alter, or repeal general state laws on the subjects included within those municipal powers. And with the city already possessed specifically of the broad police power contained in the charter section mentioned,

422

the new act of assembly cannot properly be regarded as actually doing more than to withdraw the general law from conflict so far as the city is concerned."

It was decided in *Gaither v. Jackson,* 147 Md. 655, 128 A. 769, that an ordinance of Baltimore City was invalid which purported to repeal and amend certain sections of a statute relating to the appointment of auctioneers in the city and the disposition of the license fees which they were required to pay. As stated in the opinion of the court, delivered by Judge Adkins (page 665, 147 Md., 128 A. 769, 772), the purpose of the ordinance "was, not only to withdraw from the Governor the power of ap-appointment of auctioneers for Baltimore City, but to deprive the State of the revenue theretofore received by it from license fees and duties imposed by the statute sought to be repealed."

The effect of the statute under consideration in this case, and of the ordinance which it authorized, is not to change the form of the city government, but simply to reorganize the system for the assessment of property in Baltimore City for state and municipal taxation. That purpose is not within the scope of the powers conferred upon the city by its charter, and does not depend upon an amendment of the charter by the city electorate, but can be validly accomplished in pursuance of an exercise by the Legislature of its prerogative to regulate a function which affects the State's financial interests and which has been a subject of continuing public general legislation before and since the Home Rule Amendment and the charter of the city were adopted.

*Decree affirmed, with costs.*