## COLE, ET AL. *v.* SECRETARY OF STATE, ET AL.

[No. 341, September Term, 1967.]

*Decided April 3, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, BARNES, FINAN and SINGLEY, JJ.

*H. Warren Buckler* and *William B. Calvert,* with whom were *James A. Cole* and *C. Bowie Rose* on the brief, for appellants.

*Lewis A. Noonberg, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Maryland Constitution, Art. IV, § 42 authorizes the Governor, with the advice and consent of the Senate, to appoint such justices of the peace as may be prescribed by law and provides that those so appointed shall have such jurisdiction, duties and compensation as may be fixed by law. By constitutional amendment ratified in 1940, § 41 B of Art. IV vests in the Legislature power to establish a people's court in any county and to fix the number, qualifications, tenure and method of selection of judges, their powers, duties and compensation; the jurisdiction of the court, and right of appeal therefrom; and the number, qualifications, tenure, method of selection, duties and compensation of the court's clerks, constables, and employees. § 41 B also relieves the Governor of the necessity of appointing justices of the peace under § 42 when § 41 B is implemented in any county.

The effect of the two sections, read together, is to accord a county, if so authorized by the Legislature, the option of substituting a people's court for a system of justices of the peace, constables, and magistrates. This Cecil County chose to do by causing to be introduced at the 1967 legislative session House

Bill 562 which was ultimately enacted as Chapter 256 (the Act) of the Laws of Maryland 1967. The Act amended seven sections of Art. 52 of Maryland Code (1964 Replacement Volume and 1966 Supplement), added two new sections to the same Article, and added 14 sections to the Code of Public Local Laws of Cecil County. The purpose of the legislation was to transfer the civil and criminal jurisdiction formerly conferred upon justices of the peace and trial magistrates to the People's Court of Cecil County, which was created by the Act. The Act was approved by the Governor on 14 April 1967 and by its terms was to become effective 1 June 1967.

On 24 May 1967 there were filed with the appellee, C. Stanley Blair, Maryland's Secretary of State, petitions to refer the Act to the people of Cecil County at the next election of members of the House of Representatives, as permitted by Art. XVI, § 2 of the Maryland Constitution.[1] It is conceded that the petitions were in proper form, were signed by qualified and registered voters, and bore the requisite affidavits and the number of signatures necessary to cause a referral of a public local law to the voters of a county, as provided by Constitution, Art. XVI, § 3 (a).[2]

---

1. "If before said first day of June there shall have been filed with the Secretary of the State a petition to refer to a vote of the people any law or part of a law capable of referendum, as in this Article provided, the same shall be referred by the Secretary of State to such vote, and shall not become a law or take effect until thirty days after its approval by a majority of the electors voting thereon at the next ensuing election held throughout the State for Members of the House of Representatives of the United States."

2. "The referendum petition against an Act or part of an Act passed by the General Assembly, shall be sufficient if signed by three per centum of the qualified voters of the State of Maryland, calculated upon the whole number of votes cast therein for Governor at the last preceding Gubernatorial election, of whom not more than half shall be residents of Baltimore City, or of any one County; provided that any Public Local Law for any one County or the City of Baltimore, shall be referred by the Secretary of State only to the people of said County or City of Baltimore, upon a referendum petition of ten per cent of the qualified

On 26 July 1967, the Secretary of State, relying on an opinion of the Attorney General, advised the appellants that he did not consider the Act a public local law, and that the number of signatures [3] on the petition, while sufficient to support the referral of a public local law, did not meet the requirement of Constitution, Art. XVI, § 3 respecting the referendum of a public general law.[4]

On 7 August 1967, the appellants, residents of and taxpayers in Cecil County, filed in the Circuit Court for Anne Arundel County a petition for a writ of mandamus and for injunctive relief against the Secretary of State and the Governor to require the Act to be submitted to referendum and to enjoin the Governor from proceeding under the Act. In their answer and motion for summary judgment the defendants maintained that the Act was not a public local law and that the petitions failed to meet the constitutional requirement for the referendum of a public general law. From an order of 18 October 1967 granting the defendants' motion and dismissing the petition, this appeal was taken. The sole question presented is whether the Act is a "Public Local Law for any one County" for the purposes of Constitution, Art. XVI, § 3 (a).

An examination of the legislative history of the Act, as reflected in the journals of the Senate and the House of Delegates, discloses that the Act was introduced in the House as House Bill 562 by the Cecil County delegation, and after the first reading, was referred to a select committee consisting of the county's delegation and Delegate Winton B. Osborne of Harford County for consideration. The delegation reported favorably, and the bill was passed by the House.[5] In the Senate, the Act was introduced by a senator from the legislative district in

---

voters of said County or City of Baltimore, as the case may be, calculated upon the whole number of votes cast therein respectively for Governor at the last preceding Gubernatorial election."

3. 1747: *i.e.*, in excess of the minimum requirement of 10% of the 11,994 votes cast in the county in the gubernatorial election last preceding the filing of the petitions.

4. 3% of the entire votes cast in the State in the last preceding gubernatorial election.

5. *Journal, House of Delegates, 1967* at 354, 852, 853, 1175, 1772.

which Cecil County is located; was referred to a select committee consisting of the two senators from that district and Senator Mary L. Nock and upon a favorable report of that committee, was passed by the Senate.[6]

This, of course, is the manner in which public local laws are customarily routed through the legislature, and differs from the routine followed with respect to public general laws, which are referred to standing committees of the Senate and of the House. The rules of the Senate and the House recognize this distinction.[7]

While the treatment accorded the Act by the Legislature may be indicative of legislative intent, it is by no means controlling.[8] Of more significance, however, is the fact that Chapter 894 of the Laws of 1963, which created the People's Court of Anne Arundel County and is virtually identical to the Act before us, was the subject of referendum as a public local law. Laws of Maryland 1965 at 1717. When Chapter 118 of the Laws of 1933 reduced the number of justices of the peace and deputy sheriffs in Howard County, the Attorney General ruled that the law should be the subject of a local referendum. 18 Op. Att'y Gen. 225 (1933). The same result was reached in 24 Op. Att'y Gen. 231 (1939), where the Attorney General concluded that Code (1924), Art. 10, § 18 A, which limited the right of Washington County trial magistrates to practice

---

6. *Journal, Senate, 1967* at 1108, 1543, 1544.

7. House Rule 36 provides " \* \* \* All Bills or Resolutions referred to a committee shall be referred to a Standing Committee of the House, except that those of a strictly local nature, *or those* amending the particular Code of Public Local Laws, and not having State-wide implications shall be referred to a county delegation or to the Baltimore City delegation as a select committee,. or other select committee. \* \* \* " (Italics added). Senate Rule 36 (a) is substantially identical, except that the word "Senate" is substituted for "House" and the italicized words *or those* are omitted.

8. Gaither v. Jackson, 147 Md. 655, 128 A. 769 (1925); Bradshaw v. Lankford, 73 Md. 428, 21 A. 66 (1891). *See also*, Baltimore Fidelity Warehouse Co. v. Canton Lumber Co., 118 Md. 135, 84 A. 188 (1912); Berry v. Baltimore & Drum Point R. R. Co., 41 Md. 446, 462 (1875); Everstine, *The Legislative Process in Maryland*, 10 Md. L. Rev. 91, 94-5 (1949).

law, was referable on a local basis, although it took the form of an amendment to the general law.

These examples should be contrasted with the manner in which Chapter 616 of the Laws of Maryland 1961 was treated. Chapter 616 implemented Constitution, Art. IV, § 41 C, which created the Municipal Court of Baltimore City and amended Code (1957) by adding §§ 107 through 128 to Art. 26; amending portions of Arts. 5, 27, 52, and 66½; and making substantial changes in the public local laws. When referendum was sought by petitions, Chapter 616 was properly referred to the electorate of the State as a public general law, Laws of Maryland 1963 at 2241, since it affected the substantive rights of persons beyond the limits of Baltimore City and made significant changes in the judicial system: *inter alia,* Code Art. 27, §§ 558, 559, 589 as amended, extended the jurisdiction of the municipal court to offenses committed on transportation facilities bound to or from the city; and Art. 52 as amended, altered the duties of the clerks of the Baltimore City Court and the Superior Court of Baltimore City.

In two cases this Court has held that statutes similar to the Act were public local laws. *Herbert v. Baltimore County,* 97 Md. 639, 55 A. 376 (1903) involved the validity of Chapter 147 of the Laws of 1900, which re-enacted the Laws of Baltimore County relating to justices of the peace and constables. One of the bases for the attack was that the statute violated Constitution, Art. III, § 33 which provides "And the General Assembly shall pass no special law, for any case, for which provision has been made, by an existing General Law." Our predecessors held that a "special" law as contemplated by the Constitution is a law which provides for an individual case and quoted from the opinion filed for the Court by Judge (later Chief Judge) Alvey in *State ex rel. Webster v. Co. Commrs. of Balt. Co.,* 29 Md. 516, 520 (1868):

> "The special laws contemplated by the Constitution, are those that provide for individual cases. Local laws of the class to which the Act under consideration belongs, on the other hand, are applicable to all persons, and are distinguished from Public General Laws,

only in this that they are confined in their operation to certain prescribed or defined territorial limits, and the violation of them must, in the nature of things, be local. It is not, therefore, by any means, necessary, in order to give a Statute the attributes of a public law, that it should be equally applicable to all parts of the State. All that is required to make it a public law of general obligation, is, that it shall apply to all persons within the territorial limits prescribed in the Act. That is the character of the Act before us, and of that large portion of the Statute law of our State, comprised in the codified division under the title of 'Public Local Laws.' "

*See also, Quenstedt v. Wilson,* 173 Md. 11, 194 A. 354 (1937) where the Court struck down a statute providing for the appointment of a police justice for Prince George's County for reasons other than that it was a public local law. *Cf., Funk v. Mullan Contracting Co.,* 197 Md. 192, 200-01, 78 A. 2d 632 (1951).

The Attorney General argues that the Act is not one of local significance only and relies on the fact that while the Act adds 14 sections to the Code of Local Laws of Cecil County (Code of Local Laws of Maryland, [1961] Art. 8, §§ 288B to 288-O, inclusive), the Act also repeals and re-enacts seven sections of the Public General Laws (Code, [1964 Replacement Volume, 1966 Supplement] Art. 52, §§ 6 (d), 18, 19 (1), 102, 108 (7), 119 (a), 120, and adds two new sections, 25 G and 125 C.[9] The strength of the Attorney General's contention can be measured by an examination of the changes made in the general law.

Code, Art. 52, deals generally with justices of the peace. Some of the sections, *e.g.,* §§ 1-4 dealing with qualification, are uniformly applicable to the entire state; others, *e.g.,* § 6, fixing monetary limits of civil jurisdiction, are designed to meet the needs or desires of the several counties. Sections of the latter

---

**9.** Chapter 256, Laws of Maryland 1967 designated § 125 C as § 125 D.

type were amended by the Act. These changes are of a purely mechanical nature and have no effect outside of Cecil County.[10]

---

**10.** § 6 (d) set the monetary limitations of the jurisdiction of trial magistrates in Allegany, Cecil, Charles, Washington and Queen Anne's Counties. The Act amended § 6 (d) adding the following language:

> *"From and after June 1, 1967, the civil jurisdiction vested in justices of the peace designated as trial magistrates in Cecil County shall be transferred to and vested in the People's Court of said county as established in the local laws thereof; and in addition the court shall have jurisdiction in all such cases where the amount in controversy does not exceed the amount set in the local laws."*

§ 18 authorized justices of the peace in Queen Anne's, Prince George's and Charles Counties to accept payment of fines and costs in installments. The Act added "the judge of the People's Court for Cecil County" to those so authorized.

§ 19 provided for suspension of sentence and probation by justices of the peace in Baltimore, Calvert, Charles, Montgomery, Prince George's, Harford, Carroll, Kent and Queen Anne's Counties and by the judges of the People's Court of Howard County. The Act added Cecil County.

§ 102 provided for the designation of one justice of the peace in Cecil County as committing magistrate. The Act added the provision:

> *"From and after June 1, 1967 committing magistrates for Cecil County shall be appointed pursuant to the local laws thereof and shall have the authority and duties and receive compensation as specified in such local laws."*

§ 108 (7) provided for the number, qualifications, salary, and situs of the trial magistrates in Cecil County. The Act provided that no trial magistrates were to be appointed after 1 June 1967.

§ 119 (a) provided for the appointment of one justice of the peace at large in each county, excepting Anne Arundel, Harford, Montgomery, Prince George's, Kent and Washington Counties. The Act added Cecil County to the counties excepted.

§ 120 required every trial magistrate, judge and substitute judge of the People's Courts of Anne Arundel, Montgomery and Prince George's Counties to give bond in the penalty of $5,000 and required a $1,000 bond of justices of the peace and clerks to trial magistrates, except in Anne Arundel, Montgomery and Prince George's Counties. The Act added Cecil County to the counties where a $5,000 bond was required and a $1,000 bond was not.

Two new sections were added by the Act to Code, Art. 52: § 25 G transferred to the judges of the People's Court of Cecil County the criminal jurisdiction theretofore conferred on trial magistrates. It should be noted parenthetically that §§ 25-25 F are substantially similar, and relate respectively to the People's Courts of Montgomery, Harford, Prince George's and Anne Arundel Counties; the Housing Court of Baltimore County; and the People's Court of Wicomico County. § 25 H relates to the People's Court of Dorchester County.

§ 125 C, also added to Code, Art. 52, provided that the words "trial magistrate of Cecil County" appearing in the Code and the public and local laws shall mean "judge of the People's Court of Cecil County."

§§ 125, 125 A and 125 B contain similar provisions with respect to the People's Courts in Montgomery, Prince George's and Anne Arundel Counties.

After analyzing the nature of the amendments which the Act made to Code, Art. 52, we do not share the appellees' view that the Act was essentially general, rather than local in scope. The classification of a particular statute as general or local is based on subject matter and substance and not merely on form. *Ness v. Baltimore*, 162 Md. 529, 536, 160 A. 8 (1932) ; *State v. Stewart*, 152 Md. 419, 425, 137 A. 39 (1927). Nor does the fact that the statute takes the form of an amendment to the general law make it a public general law rather than a public local law if its subject matter is exclusively local. *State v. Stewart, supra.* If we apply the test adopted by Judge Alvey in *State ex rel. Webster v. Co. Commrs. of Balt. Co., supra, i.e.,* that local laws differ from general laws only in that they are confined in their operation to certain prescribed or definite territorial limits, the conclusion is inevitable: the Act was a local, not a general, law.

This conclusion is strengthened by the fact that §§ 288B to 288-O, added to the Code of Local Laws of Cecil County, set up the local People's Court; provided for the manner in which the judge was to be appointed or elected; prescribed his qualifications; provided for a substitute judge; defined the court's jurisdiction; authorized the adoption of rules; outlined the procedure; provided for the appointment of a clerk and described

his duties; fixed the salaries of the judge, the substitute judge, the clerk, and his assistant; made provision for the payment of a pension to a retired judge or his surviving spouse; and set up a system of committing magistrates.

Prior to the amendment of our constitution on 2 November 1915, when Art. XVI was ratified, referendum by petition did not exist in Maryland. Legislative referendum was possible only with respect to local laws, since this Court had consistently held that to condition the operative effect of a law of general applicability upon approval by the voters of the State was an improper delegation of legislative authority. *Hammond v. Haines,* 25 Md. 541, 90 Am. Dec. 77 (1866); *Burgess v. Poe,* 2 Gill 11 (1844). As a consequence, many of the early cases which distinguished between laws of local application and laws having a general effect dealt with the question of whether the statute under consideration was referable.

Examples of statutes held to be local laws can be found in *Ness v. Baltimore, supra,* (Blue Laws for Baltimore City); [11] *Bd. of Ed. v. Mayor, etc. of Frederick,* 194 Md. 170, 69 A. 2d 912 (1949) (law permitting condemnation of school property in Frederick); *Herbert v. Baltimore County, supra* (regulating compensation of justices of peace in Baltimore County); *Hammond v. Haines, supra* (extending local option to residents of town of North East); *Fell v. State,* 42 Md. 71 (1875) (local option, Caroline County); *Hamilton v. Carroll,* 82 Md. 326, 33 A. 648 (1896) (relocation of county seat); *State ex rel. Webster v. Co. Commrs. of Balt. Co., supra* (Baltimore County roads); *Burgess v. Poe, supra* (adoption of primary school system on a county-by-county basis).

On the other hand, some statutes, local in form, have been held to be general laws, since they affect the interest of the whole state. *Norris v. Mayor & City Council of Baltimore,* 172 Md. 667, 192 A. 531 (1937) (statute requiring use of voting machines in Baltimore City); [12] *Bradshaw v. Lankford,* 73 Md.

---

**11.** *But see,* Levering v. Supervisors of Elections, 129 Md. 335, 99 A. 360 (1916) which was distinguished in Ness v. Baltimore, 162 Md. at 537, 160 A. at 11.

**12.** The decision of the Circuit Court for Prince George's County on 20 June 1967 in Sawyers v. Board of County Commissioners, cited by the appellees, adopted the rule of the Norris case.

428, 21 A. 66 (1891) (prohibition of oyster dredging in Somerset County) ; *Gaither v. Jackson,* 147 Md. 655, 128 A. 2d 769 (1925) (Baltimore City ordinance licensing auctioneers) ; *Dasch v. Jackson,* 170 Md. 251, 183 A. 534 (1936) (state law licensing paper hangers in Baltimore City). The rationale of these cases lies in the concept that while the immediate objective sought to be achieved was local in character, the statutes indirectly affected matters of significant interest to the entire state: *i.e.,* regulation of elections, control of natural resources,[13] and protection of state revenues derived from licenses.

Our consideration of the provisions of the Act leads us to the view that in subject matter and substance it is a law which is confined in its operation to prescribed territorial limits, equally applicable to all persons within such limits. It is thus readily distinguishable from a general law, which deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state. Constitution, Art. XVI, § 3 (a), Art. XI A, § 4.

Since we have concluded that the Act was local in character, it was properly the subject of a petition for referendum by the voters of Cecil County as provided by Constitution, Art. XVI, § 3 (a). The appellees' motion for summary judgment should not have been granted and the writ of mandamus sought by the appellants should have issued.

> *Order reversed; remanded for issuance of writ of mandamus; costs to be paid by appellees.*

---

**13.** *See also,* Stevens v. State, 89 Md. 669, 43 A. 929 (1899), which upheld an act regulating the sale of wildfowl and game in Baltimore City and certain counties.