274 Md. 597 (1975)
337 A.2d 92
STATE'S ATTORNEY OF BALTIMORE CITY ET AL.
v.
MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.
[No. 128, September Term, 1974.]
Court of Appeals of Maryland.
Decided May 6, 1975.
The cause was argued before MURPHY, C.J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.
William J. Giacofci, Assistant Attorney General, with whom were Francis B. Burch, Attorney General and Walter G. Lohr, Jr., Assistant Attorney General, on the brief, for State's Attorney of Baltimore City, and Jay Fred Cohen on the brief for Milton F. Kirsner and The Linden Holding Company, appellants.
Joseph S. Matricciani, Assistant City Solicitor, with whom were Benjamin L. Brown, City Solicitor, and Richard M. Hartman, Chief Assistant City Solicitor, on the brief, for appellees.
*599 ELDRIDGE, J., delivered the opinion of the Court.
The principal question in this case concerns the constitutionality of Maryland Code (1957, 1972 Repl. Vol.), Art. 53, § 44. That statutory provision, enacted by the General Assembly into law by Section 10 of Chapter 423 of the Acts of 1971, provides:
"From and after July 1, 1973, violations of the Building and Electrical Code of the Baltimore City Code, Article 32 (1966 Edition), are to be actions at law. Jurisdiction in all cases of violations of the Building and Electrical Code shall be vested in the District Court of Baltimore City having civil jurisdiction."[1]
Apart from the effect of Art. 53, § 44, violations of Article 32 of the Baltimore City Code (1966 Edition) (the "Building Code of Baltimore City") and violations of Baltimore City Ordinance No. 902, approved December 22, 1966 (the "Housing Code of Baltimore City"), are criminal offenses (misdemeanors), punishable by a fine of up to three hundred dollars for each offense.
On June 20, 1973, about ten days before Art. 53, § 44, was to become effective, the State's Attorney of Baltimore City wrote to the City Solicitor of Baltimore City, advising the City Solicitor of the provisions of Art. 53, § 44, and informing him "that after July 1, 1973, the responsibility for legal action in such cases involving the Building and Electrical Code will have to be transferred to your office."[2] Thereupon, the Mayor and City Council of Baltimore, represented by the City Solicitor, instituted this action *600 against the State's Attorney of Baltimore City by filing a bill of complaint in the Circuit Court of Baltimore City. The plaintiff sought a declaration that Art. 53, § 44, was unconstitutional and a "mandatory injunction requiring the Defendant [State's Attorney] ... to continue the criminal prosecution of all violations of the Building and Electrical Codes of Baltimore City, Article 32 (1966 Edition)."
Subsequently, Robert C. Embry, Jr., Commissioner of the Department of Housing and Community Development of Baltimore City, intervened as a party plaintiff. Milton F. Kirsner and The Linden Holding Company, property owners in Baltimore City and defendants in pending criminal actions growing out of violations of the City's Building and Electrical Codes, intervened as parties defendant. After the orders permitting intervention, the action was transferred to the Superior Court of Baltimore City pursuant to Maryland Rule 515. In the Superior Court, the plaintiffs filed an "Amended And Supplemental Declaration By Interlineation," setting forth more explicitly the grounds upon which they claimed that Art. 53, § 44, was unconstitutional. The plaintiffs repeated their request for a declaratory judgment and also sought the issuance of a writ of mandamus requiring the State's Attorney to prosecute criminally "all" violations of the Baltimore City Building and Electrical Codes.
As to the grounds of unconstitutionality, the plaintiffs contended that Art. 53, § 44, was inconsistent with the following constitutional provisions:
(1) the "Home Rule" amendment to the Maryland Constitution, particularly Art. XI-A, § 4;
(2) Art. IV, § 41A, of the Maryland Constitution, which (with an exception not here pertinent) requires that the jurisdiction of the District Court be uniform throughout the State;
(3) the "due process" clause of the Fourteenth Amendment to the United States Constitution because, it was alleged, the statutory provision *601 was "quasi-criminal legislation" and was too vague to be enforced;
(4) the clause of Art. III, § 29, of the Maryland Constitution, requiring that a law shall embrace one subject;
(5) the clause of Art. III, § 29, of the Maryland Constitution which requires that the subject of every law "shall be described in its title";
(6) the "equal protection of the laws" provision of the Fourteenth Amendment to the United States Constitution.
In their responses to the amended and supplemental declaration, the defendants Kirsner and Linden Holding Company, in addition to denying that Art. 53, § 44, was unconstitutional, challenged the standing of the plaintiffs to bring the action. The answer of the defendant State's Attorney did not raise the standing question.
On June 21, 1974, the Superior Court (Cole, J.) issued an order declaring Art. 53, § 44, to be "null, void, unconstitutional and of no effect." The order also provided that the State's Attorney "is ordered to criminally prosecute all violations of the Building and Electrical Codes of Baltimore City" and that "a Writ of Mandamus shall issue requiring" the State's Attorney to prosecute criminally all such violations. In an opinion delivered at the same time, the Superior Court first held that the plaintiff Embry, being the official "charged with the responsibility of enforcing the Housing Code and Building Code, ... is entitled to maintain this suit...." Because of its ruling that Commissioner Embry had standing, the Superior Court stated that it did not have to decide whether the City had standing. The Superior Court went on to hold that Art. 53, § 44, violated § 4 of Art. XI-A of the Maryland Constitution (the so-called "Home Rule Amendment"). The court also held that the statute violated Art. IV, § 41A of the Maryland Constitution, which requires that the jurisdiction of the District Court be uniform throughout the State. Holding the statute *602 unconstitutional on these two grounds, the Superior Court found it unnecessary to consider the other constitutional issues raised.
The defendants took an appeal to the Court of Special Appeals. Thereafter this Court on its own motion issued a writ of certiorari prior to a decision by the Court of Special Appeals. See Code (1974), §§ 12-201 and 12-203 of the Courts and Judicial Proceedings Article.
The defendants Milton F. Kirsner and Linden Holding Company raise again the threshold issue of the plaintiffs' standing to bring this suit. They rely upon the principle that generally a subdivision like Baltimore City, "as a creature of the State, possesses no power which it may invoke against the State, even on constitutional grounds." City of Baltimore v. Concord, 257 Md. 132, 139, 262 A.2d 755 (1970). See also Baltimore County v. Churchill, Ltd., 271 Md. 1, 5-8, 313 A.2d 829, appeal dismissed, 417 U.S. 902, 94 S.Ct. 2594, 41 L.Ed.2d 207 (1974), and cases therein cited. However, it was stipulated by all parties that the plaintiff Embry, the Commissioner of Housing and Community Development of Baltimore, is the city official responsible for the administrative enforcement of the Building and Electrical Codes of Baltimore City. Therefore, we conclude that he had standing under the principle that a public official, faced with a dilemma "either in refusing to act under a statute he believes to be unconstitutional, or in carrying it out and subsequently finding it to be unconstitutional," has standing to bring a declaratory judgment action to challenge the validity of the statute. Baltimore County v. Churchill, Ltd., supra, 271 Md. at 5; City of Baltimore v. Concord, supra, 257 Md. at 138; Pressman v. State Tax Commission, 204 Md. 78, 85, 102 A.2d 821 (1954). Since one of the plaintiffs, Commissioner Embry, had standing to bring the action, it is unnecessary for us to consider the matter of Baltimore City's standing.
Turning to the constitutionality of Art. 53, § 44, we agree with the Superior Court that the enactment of § 44 violates a restriction upon the authority of the General Assembly *603 imposed by Art. XI-A, § 4, of the Maryland Constitution. Consequently, we need not consider any of the other asserted grounds for the statute's invalidity.
Art. XI-A of the Maryland Constitution, the "Home Rule Amendment," was ratified by the voters in 1915. Its purpose was described by Judge W. Mitchell Digges for this Court in State v. Stewart, 152 Md. 419, 422, 137 A. 39 (1927):
"The wisdom of incorporating in the organic law of the state such provisions as are contained in this article had been urged for a number of years prior to its adoption, the reasons assigned by its proponents being that a larger measure of home rule be secured to the people of the respective political subdivisions of the state in matters of purely local concern, in order that there should be the fullest measure of local self-government, and that these local questions should thus be withdrawn from consideration by the General Assembly, leaving that body more time to consider and pass upon general legislation, and to prevent the passage of such legislation from being influenced by what is popularly known as `log-rolling'; that is, by influencing the attitude and vote of members of the General Assembly upon proposed general laws by threatening the defeat or promising the support of local legislation in which a particular member might be peculiarly interested."
The provisions of Art. XI-A which accomplished the purpose of limiting the right of the General Assembly to consider certain local matters which were vested in the counties adopting a home rule charter and in Baltimore City, are §§ 2 and 4 of Art. XI-A. Section 2 provides:
"The General Assembly at its first session after the adoption of this amendment shall by public general law provide a grant of express powers for such County or Counties as may thereafter form a charter under the provisions of this Article. Such *604 express powers granted to the Counties and the powers heretofore granted to the City of Baltimore, as set forth in Article 4, Section 6, Public Local Laws of Maryland [the "General Powers" provisions of the Baltimore City Charter, now contained in Art. II of the Baltimore City Charter (1964 Revision)], shall not be enlarged or extended by any charter formed under the provisions of this Article, but such powers may be extended, modified, amended or repealed by the General Assembly."
Section 4 provides:
"From and after the adoption of a charter under the provisions of this Article by the City of Baltimore or any County of this State, no public local law shall be enacted by the General Assembly for said City or County on any subject covered by the express powers granted as above provided. Any law so drawn as to apply to two or more of the geographical sub-divisions of this State shall not be deemed a Local Law, within the meaning of this Act. The term `geographical sub-division' herein used shall be taken to mean the City of Baltimore or any of the Counties of this State."
Under these sections, while the General Assembly has the authority to determine what powers are to be exercised by Baltimore City or the charter counties, the General Assembly may not enact a public local law for the City or any charter county which modifies the powers so granted. If the General Assembly wishes to diminish the powers granted to Baltimore City or a charter county, it must do so by amending the acts which granted the powers. It may not do so by enacting a separate public local law which is merely inconsistent with the acts granting the express powers to the City or to the charter counties. These principles were explained by Judge Digges for the Court in State v. Stewart, supra, 152 Md. at 424, as follows:

*605 "If the General Assembly, in its grant of powers to Baltimore City, subsequently concludes that the grant of powers contained a subject upon which the General Assembly should have authority to legislate, and not the city authorities, it can only accomplish this by amending or repealing the act granting and delineating the powers. The Legislature has the power to describe the field within which the local authorities may legislate, but having once done this, it cannot restrict or limit this field of legislation without changing its boundaries. The legislation in respect to the subjects contained in the granted powers is therefore committed exclusively to the local authorities and denied to the General Assembly, so long as the grant of powers remained unchanged. Any other interpretation would render the provisions of article 11A meaningless, and result in nullifying the purpose sought to be accomplished by its adoption. If the Legislature could change the grant of power by the simple expedient of passing an act in conflict with the legislation of the local authorities, it would result in the complete frustration of the object of the amendment."
See also Scull v. Montgomery Citizens, 249 Md. 271, 274, 239 A.2d 92 (1968); Armco v. Dept. of Assess. & Tax., 236 Md. 168, 181, 202 A.2d 741 (1964); Balto. Transit Co. v. MTA, 232 Md. 509, 518-520, 194 A.2d 643 (1963); Kimball-Tyler v. Balto. City, 214 Md. 86, 94, 133 A.2d 433 (1957); Castle Farms, Etc. v. Lex. Mkt. Auth., 193 Md. 472, 485-486, 67 A.2d 490 (1949); Denhard v. Baltimore, 167 Md. 416, 421, 173 A. 267 (1934); Baltimore v. Fuget, 164 Md. 335, 341-342, 165 A. 618, 88 A.L.R. 1058 (1933); Ness v. Baltimore, 162 Md. 529, 534-536, 160 A. 8 (1932).
Although there is a strong presumption that acts of the General Assembly are constitutional, and although this Court will not declare a statute invalid unless its invalidity is absolutely clear, nevertheless we are compelled in this *606 case to conclude that Art. 53, § 44, violates Art. XI-A, § 4, of the Maryland Constitution. It is undisputed that the General Assembly has expressly granted to Baltimore City the power to regulate by ordinance the construction, use, operation and maintenance of buildings and structures, and the power to make violations of such ordinances misdemeanors punishable by fines not exceeding $500.00 or imprisonment for not longer than twelve months. See Baltimore City Charter (1964 Revision), Art. II, §§ 1 and 48. It is further conceded by all parties to this case that the "Building and Electrical Codes of Baltimore City represent an expression of that charter power." Moreover, Art. 53, § 44, being Section 10 of Ch. 423 of the Acts of 1971, did not purport to be, and clearly was not, an act amending the grant of express powers to Baltimore City.
It is also obvious that Art. 53, § 44, is inconsistent with the City's exercise of its delegated powers. Violations of the Baltimore City Building and Electrical Codes are, by City ordinance, misdemeanors punishable by fines of not more than $300.00 for each violation, with each day that a violation is permitted to continue being a separate criminal offense. See Baltimore City Code (1966 Ed.), Art. 32, § 192, par. 1922. However, Art. 53, § 44, specifies that "violations of the Building and Electrical Code of the Baltimore City Code, Article 32 ... are to be actions at law." It goes on to vest jurisdiction over such violations in the District Court of Baltimore City "having civil jurisdiction." Thus § 44 attempts to modify the enforcement provisions of Art. 32 of the Baltimore City Code. It purports to remove the criminality associated with violations of Art. 32 of the Baltimore City Code, and change what were previously misdemeanors into "actions at law."
Under Art. XI-A, § 4, of the Maryland Constitution, the General Assembly may enact legislation inconsistent with the express powers it had previously granted to Baltimore City or to the charter counties if it does so by public general law. The restriction upon the authority of the General Assembly in § 4 of Art. XI-A relates to the enactment of public local laws only. The thrust of the defendants' *607 argument in favor of the constitutionality of Art. 53, § 44, is that § 44 is a public general law because it deals with the jurisdiction of the District Court, which is a state and not a local government entity. However, we do not believe that § 44 was designed to diminish or increase the criminal or civil jurisdiction of the District Court. Instead, it was an effort to repeal the criminal sanction for violations of a local ordinance. Both before and after the effective date of § 44, the District Court's criminal jurisdiction extended to violations of municipal ordinances if the violations are misdemeanors, and its civil jurisdiction included specified types of actions at law. See Code (1974), §§ 4-301(3) and 4-401 of the Courts and Judicial Proceedings Article, and Code (1957, 1973 Repl. Vol.), Art. 26, §§ 145 (b)(2)(ii) and 145 (c). Art. 53, § 44, did not purport to change this. Removing the criminal sanction for violations of a particular statute, while it may have the effect of reducing the volume of criminal cases and increasing the volume of civil cases coming before a court, does not constitute a change in the jurisdiction of the court.
Art. 53, § 44, applies to only one geographical subdivision of the state. Cf., Pr. George's Co. v. Md.- Nat'l Cap., 269 Md. 202, 224, 306 A.2d 223, cert. denied, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973). As discussed above, § 44 does not change the jurisdiction of the District Court. Instead, its subject matter is "exclusively local," Cole v. Secretary of State, 249 Md. 425, 433, 240 A.2d 272 (1968); State v. Stewart, supra, 152 Md. at 425. Section 44 is not legislation forming "an integral part of ... [an] entire bi-county [or multi-county] scheme," Prince George's Co. v. Laurel, 262 Md. 171, 188, 277 A.2d 262 (1971). See also Balto. Transit Co. v. MTA, supra, 232 Md. at 518-520. Under these decisions setting forth the standards for distinguishing between a public general law and a public local law, Art. 53, § 44, is clearly a public local law. As such, it is unconstitutional under Art. XI-A, § 4, of the Maryland Constitution.[3]
*608 While we agree with the order of the Superior Court insofar as it declared Art. 53, § 44, to be unconstitutional, there is one aspect of the Superior Court's order which requires modification. In paragraph 3, the State's Attorney for Baltimore City was ordered to prosecute criminally "all violations" of the Building and Electrical Codes of Baltimore City. Paragraph 4 of the order provided that a writ of mandamus shall issue requiring the defendant State's Attorney to prosecute criminally "all violations" of the Building and Electrical Codes. Mandating that the State's Attorney prosecute all violations of the Building and Electrical Codes is an interference by the judiciary with the discretion vested in the State's Attorney. As this Court stated in Brack v. Wells, supra, 184 Md. at 90:
"In such prosecutions of persons accused of crime, he [the State's Attorney] must exercise a sound discretion to distinguish between the guilty and the innocent. He must be trusted with broad official discretion to institute and prosecute criminal causes, subject generally to judicial control. The office is one not purely ministerial, but involves the exercise of learning and discretion.... As a general rule, whether the State's Attorney does or does not institute a particular prosecution is a matter which rests in his discretion. Unless that discretion is grossly abused or such duty compelled by statute or there is a clear showing that such duty exists, mandamus will not lie."
See also Confiscation Cases, 7 Wall. (74 U.S.) 454, 19 L.Ed. 196 (1869); Powell v. Katzenbach, 359 F.2d 234 (D.C. Cir.1965), cert. denied, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d *609 359, reh. denied, 384 U.S. 967, 86 S.Ct. 1584, 16 L.Ed.2d 679, (1966); Moses v. Katzenbach, 342 F.2d 931 (D.C. Cir.1965), affirming sub nom. Moses v. Kennedy, 219 F. Supp. 762 (D.D.C. 1963); Goldberg v. Hoffman, 225 F.2d 463 (7th Cir.1955); Pugach v. Klein, 193 F. Supp. 630 (S.D.N.Y. 1961); State v. Hunter, 10 Md. App. 300, 305-306, 270 A.2d 343 (1970), remanded on other grounds, 263 Md. 17, 278 A.2d 608 (1971); Boyne v. Ryan, 100 Cal. 265, 34 P. 707 (1893); Note, Prosecutorial Discretion, 74 Yale L.J. 1297 (1965).
Consequently, the portions of the Superior Court's order requiring the State's Attorney to prosecute all violations of the Baltimore City Building and Electrical Codes will be deleted. We assume that in light of the declaratory judgment that Art. 53, § 44, is unconstitutional, which we affirm, the State's Attorney of Baltimore City will continue to prosecute criminally those violations of the Baltimore City Building and Electrical Codes which, in the exercise of his discretion, he deems warrant criminal prosecution.
Paragraphs 3 and 4 of the order of the Superior Court of Baltimore City are deleted, and the order, as so modified, is affirmed.
Costs to be evenly divided among the parties.
NOTES
[1] Art. 53, § 44, will be repealed effective July 1, 1975. See Ch. 128 of the Acts of 1975.
[2] Of course, the duty of prosecuting criminal cases is that of the State's Attorney, Code (1957, 1968 Repl. Vol.), Art. 10, § 34; Brack v. Wells, 184 Md. 86, 90, 40 A.2d 319, 156 A.L.R. 324 (1944); Wells v. Price, 183 Md. 443, 449, 37 A.2d 888 (1944); State v. Aquilla, 18 Md. App. 487, 493, 309 A.2d 44, cert. denied, 269 Md. 755 (1973). On the other hand, the City Solicitor of Baltimore City is the official who would normally represent the City in actions "at law" brought by the City, Charter of Baltimore City (1964 Revision), Art. 7, §§ 26-28.
[3] Our holding that Art. 53, § 44, of the Code, being Section 10 of Ch. 423 of the Acts of 1971, is unconstitutional, does not affect the validity of the other provisions of Ch. 423. Section 10 of Ch. 423 is severable from the other sections of Ch. 423 which actually do relate to the jurisdiction, administration, operation, procedures, etc., of the district court system. See Anne Arundel County v. Moushabek, 269 Md. 419, 428-431, 306 A.2d 517 (1973); Clark's Park v. Hranicka, 246 Md. 178, 185, 227 A.2d 726 (1967); Sanza v. Md. Board of Censors, 245 Md. 319, 338-339, 226 A.2d 317 (1967).