806 A.2d 341

KENT ISLAND DEFENSE LEAGUE, LLC, et al.

v.

QUEEN ANNE'S COUNTY BOARD OF ELECTIONS et al.

and

K. Hovnanian at Kent Island, LLC, et al.

Nos. 571, 572, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Aug. 30, 2002.

Thomas A. Deming, Annapolis, for appellants.

George A. Nilson (Ashlea B. Howard, Piper, Rudnick, LLP, Baltimore, Joseph A. Stevens and Stevens & Associates, LLC, Centreville, on the brief for appellees, Non–Governmental, Jeffrey E. Thompson and Thompson & Thompson of Centreville, on the brief for appellees, Queen Anne's County Board of Elections and Election Director Williams) for appellees.

Argued before JAMES R. EYLER, BARBERA and RAYMOND G. THIEME, (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

The principal question before us is whether two ordinances enacted by Queen Anne's County, a code home rule county under Article XI–F of the State Constitution, are subject to a referendum of the voters of the County. The ordinances redesignated certain properties that are subject to the Chesapeake Bay Critical Area Program from one development category to another. *See* Md.Code (1984, 200 Repl.Vol.), Nat. Resources, §§ 8–1801—8–1817, and Code of Public Local

Laws of Queen Anne's County (1996), Title 14, Environmental Protection, subtitle 1.

We hold that the ordinances are not subject to referendum. In light of that holding, we need not address the other issue raised, *i.e.*, whether the form of the referendum petition was in compliance with applicable law. *See* Md.Code (1967, 2001 Repl.Vol.), Art. 25B, § 10(h)(4).

## The Parties

Kent Island Defense League, LLC, an appellant, presented a petition for referendum to the County Board of Elections, an appellee. The Elections Director, Brenda Williams, another appellee, determined that the petition was legally deficient. Kent Island Defense League, LLC, and Richard E. Moser, its president and a registered voter in Queen Anne's County, another appellant, filed a petition for judicial review of that decision in the Circuit Court for Queen Anne's County. K. Hovnanian at Kent Island, LLC, developer of the property that is the subject of the referendum petition, and Douglas M. Shreve, a registered voter of Queen Anne's County, additional appellees, filed a complaint for declaratory judgment in the Circuit Court for Queen Anne's County, seeking a declaration that the petition for referendum was legally deficient. The cases were consolidated. The circuit court held that the petition for referendum was legally deficient.

## Background

The General Assembly, in enacting the Chesapeake Bay Critical Area Protection Program in 1984, stated that its purpose was "to establish a resource protection program for the Chesapeake Bay and its tributaries by fostering more sensitive development activity for certain shoreline areas." Md.Code, Nat. Resources, § 8–1801(b)(1). The program was to be a cooperative one between the State and certain local governments, with local governments implementing their programs in, a "consistent and uniform manner subject to State criteria and oversight," with oversight performed by the Criti-

cal Area Commission (the Commission). Md.Code, Nat. Resources, §§ 8–1801(b)(2), 8–1808(a)(1).

Queen Anne's County enacted a Critical Area program. *See* Code of Public Local Laws of Queen Anne's County, Title 14, subtitle 1. Pursuant to the state statute establishing the program, Queen Anne's County designated all county land within the Critical Area for inclusion in one of three development categories, based upon conditions existing as of December 1, 1985. The development categories are Resource Conservation Area (RCA); Limited Development Area (LDA); and Intensely Developed Area (IDA). *See* COMAR 27.01.02.07C. Local jurisdictions were authorized by state law to provide for future expansion of the amount of acreage designated LDA or IDA, a procedure known as "growth allocation," by an amount that could not exceed five percent of the acreage in the local jurisdiction originally designated RCA. *See* COMAR 27.01.02.06A(1).

On June 9, 2000, a petition was filed with the County Commissioners to re-designate approximately 293 acres from RCA to LDA and approximately 80 acres from LDA to IDA. On July 13, 2000, the County Planning Commission recommended approval of the petition for re-designation of the land. On July 25, 2000, the County Commissioners granted "conceptual approval" and forwarded the proposal to the Commission. On December 6, 2000, the Commission approved the petition subject to certain conditions. On February 27, 2001, the County Commissioners held a public hearing, and on April 10, 2001, the County Commissioners, by resolution, approved the petition subject to certain changes and conditions. As a result of the changes and conditions, the County Commissioners referred the petition back to the County Planning Commission for any input and back to the Commission for its approval. On August 21, 2001, after the Commission's approval, the County Commissioners enacted the ordinances in question, 01–01 and 01–01A. The ordinances approved the petition to re-designate the land subject to the conditions and changes previously approved by resolution.

On September 28, 2001 and October 23, 2001, appellants filed a petition to refer the ordinances to the voters of the County. By a Declaration of Deficiency issued pursuant to Maryland Code, Article 33, section 6–206(c), the Elections Director advised appellants that the petition was legally deficient because the ordinances were not subject to referendum and because the petition was deficient in form.

On November 5, 2001, appellants, pursuant to Article 33, section 6–209(a), filed a petition for judicial review of the Elections Director's decision. On December 7, 2001, appellees K. Hovnanian at Kent Island, LLC, and Douglas M. Shreve filed a complaint for declaratory judgment, raising the same issues plus an additional issue as to the form of the referendum petition. After hearing argument in both cases, the circuit court held that the ordinances in question were not subject to referendum. Appellants noted an appeal to this Court.

### Discussion

Local political subdivisions are creations of the State. Except to the extent that the State Constitution restricts legislation, the counties and Baltimore City are subject to control by the General Assembly. The local subdivisions may acquire home rule, a status which restricts the power of the General Assembly to enact local laws, as provided in the State Constitution. Article XI–A, added to the Constitution in 1915, provides for a charter form of local government. Article XI–E, added to the Constitution in 1954, applies to municipalities. Article XI–F, added to the Constitution in 1966, provides for a code form of government.[1]

Article XI–A was implemented by the Express Powers Act, Maryland Code, Article 25A, section 5, enacted in 1918. Article XI–F, which did not require legislative implementation, was supplemented by Maryland Code, Article 25B, enacted in 1967. Prior to ratification of Article XI–F, all non-charter

---

1. In the absence of one of the above forms of local government, there is some power of self government. See Md.Code, Art. 25, §§ 1–4.

counties had been delegated power to legislate in matters of zoning and land use, *see* Md.Code, Art. 66B, § 4.01, but these powers were not exclusive. Article 25B, section 13, gave code home rule counties the same power to legislate in the areas of zoning and land use as charter counties had under Article 25A, section 5(X).

■ The governmental power of Queen Anne's County, a code county, is subject to the State's Constitution, public general laws, and public local laws enacted by the General Assembly, to the extent permitted by the Constitution. Additionally, the powers of home rule that might otherwise appear to exist have been limited by court decisions applying the doctrines of conflict and preemption. Pursuant to these doctrines, legislative acts by a local jurisdiction that conflict with a public general law or that deal with an area in which the General Assembly has occupied the entire field or which deal with an area that the General Assembly has expressly reserved to itself, are invalid. *See County Council for Montgomery County v. Montgomery Association, Inc.,* 274 Md. 52, 59, 333 A.2d 596 (1975). A proposed new Constitution, which would have imposed greater restrictions on the General Assembly with respect to its ability to control local matters in a particular county, was defeated in 1968.

With the above framework in mind, we turn to the specific constitutional and statutory provisions relevant to the issues before us. Article XI–F of the Constitution and Article 25B, section 10(h), of the Maryland Code, contain the referendum provisions applicable to code counties. Article XI–F, section 7, provides in part that "[a]ny action of a code county in the enactment, amendment, or repeal of a public local law is subject to a referendum of the voters in the county...." Section 1 of that Article provides in part that,

"public local law" means a law applicable to the incorporation, organization, or government of a code county and contained in the county's code of public local laws; but this latter term specifically does not include (i) the charters of municipal corporations under Article 11E of this Constitu-

tion, (ii) the laws or charters of counties under Article 11A of this Constitution, (iii) laws, whether or not Statewide in application, in the code of public general laws, (iv) laws which apply to more than one county, and (v) ordinances and resolutions of the county government enacted under public local laws.

Article 25B, section 10(h)(2), provides that "[t]he citizens of a code county, by petition, may submit to the registered voters of the county any public local law or portion thereof enacted under this subtitle." The specific questions before us are whether Article XI–F applies, and if so, whether the ordinances in question are "public local laws" within the meaning of Article XI–F, section 7, of the Constitution and Article 25B, section 10(h)(2), of the Maryland Code, or "ordinances" within the meaning of subsection (2)(v) in Article XI–F, section 1, of the Constitution.

■ In contending that the ordinances are subject to referendum, appellants rely on the language in Article XI–F, section 7, which provides that an enactment, amendment, or repeal of a public local law is subject to a referendum of the voters in the county. Appellants observe that the ordinances in question, by their express terms, repealed and reenacted with amendments the Code of Public Local Laws of Queen Anne's County, Title 14, and specifically, Chesapeake Bay Critical Area maps bearing numbers 49 and 57. Consequently, according to appellants, the ordinances were public local laws and not ordinances enacted "under" a public local law. Appellants also observe that, prior to the ratification of Article XI–F, non-charter counties had been delegated power to legislate in matters of zoning and land use. *See* Md.Code, Art. 66B, § 4.01. Article XI–F extended that power, but placed restrictions on the General Assembly. Relying on Natural Resources, sections 8–1801(b)(2) and 8–1808(a)(1), appellants argue that the State Critical Area law contemplated that counties would exercise their power previously delegated with respect to zoning and land use. Indeed, appellants point out that the General Assembly could not take away such authority previously delegated, by Constitutional enactment,

to code home rule counties. Appellants assert that the subject matter of the ordinances in question falls within the category of zoning and land use.

Anticipating an argument by appellees, appellants acknowledge that Natural Resources, section 8–1809(e), provides that within 90 days after the Commission approves a local jurisdiction's proposed Critical Area program, the local jurisdiction shall adopt the program "in accordance with legislative procedures for enacting ordinances." Md.Code, Nat. Resources, § 8–1809(e). Appellants argue, however, that the word "ordinances" in section 8–1809 was used generically to mean local laws, rather than "ordinances" within the meaning of Article XI–F, section 1(v). In fact, according to appellants, section 8–1809(e) confirms that local jurisdictions were expected to enact local programs in the same manner as any other public local law. Appellants also contend that the form of the petition for referendum satisfied all legal requirements. *See* Md.Code, Art. 25B, § 10(h)(4).

Appellees argue that the ordinances in question were enacted under authority of a public general law, *i.e.*, Natural Resources, §§ 8–1801 to 8–1817, and not pursuant to the County's home rule powers. Appellees elaborate by stating that enactment of the ordinances was not pursuant to the County's zoning and land use power, but was pursuant to a state general law which requires uniformity. Additionally, appellees argue that the ordinances in question are "ordinances" within the meaning of Article XI–F, section 1(v), and Natural Resources, section 8–1809(e), and are not "public local laws," which are subject to referendum.

Appellees also contend that the form of the petition for referendum violated Article 25B, section 10(h)(4), because (1) it failed to include the maps as amended by the ordinances, and (2) one of the ordinances was stapled to each page of the petition as opposed to being printed on the petition itself. The subsection requires that each page of a petition "shall contain the full text of the public local law or part of the public local law petitioned to referendum . . . ." Md.Code, Art. 25B,

§ 10(h)(4). As previously indicated, we need not decide this issue.

The General Assembly cannot take away the express right to referendum contained in Article XI–F of the Constitution,[2] if applicable, but we hold that the ordinances in question were enacted pursuant to a public general law and not as an exercise of home rule powers. All of the County's actions with respect to its Critical Area program were taken pursuant to mandatory language in the State Critical Area law, a public general law, binding on the County. Every local jurisdiction in which any part of the Chesapeake Bay Critical Area,[3] is located must develop a Critical Area protection program, and if not, the Commission shall adopt a program for the part of the Critical Area in that jurisdiction. *See* Md.Code, Nat. Resources, §§ 8–1809(a), (b). The ordinances were part of the implementation of a State program in which uniformity is required and in which the Commission is given authority to achieve such uniformity. The State statutes do not provide for, nor contemplate, local referenda. *See, e.g.,* Md.Code, Nat. Resources, § 8–1809(*o*)(2) (providing that if a proposed program amendment is approved by the Commission, the local jurisdiction "shall incorporate" the amendment into the

---

**2.** We note that Article XI–A of the Constitution does not contain an express referendum provision. While speculation, a possible reason is that charter counties can include the right to referendum in their charter. *See Ritchmount Partnership v. Board of Supervisors of Elections,* 283 Md. 48, 64, 388 A.2d 523 (1978). Code counties have no document similar to a charter setting forth their governmental structure. Additionally, as an aid to comparison of Articles XI–A and XI–F, we note that Article XI–A and Md.Code, Article 25A, use "Public Local Law" to mean a law enacted by the General Assembly applicable to only one geographic subdivision in the State and use "local law" to mean a law enacted by the local jurisdiction. Article XI–F and Md. Code, Article 25B, use "public local law" to mean a law "applicable to . . . a code county" and appears to include, but is not limited to, laws enacted by the local jurisdiction (Article XI–F, section 4, provides the General Assembly may enact "public local laws" applicable to all code counties). Note, however, that the referendum provision in section 7 applies only to action by the county.

**3.** The Area is defined in Natural Resources, section 8–1807.

adopted program within 120 days after receiving notice from the Commission of its approval).

Queen Anne's County could have enacted some type of critical area program, but it could not have enacted the equivalent of the State's program because it has no power to achieve uniformity in the entire Chesapeake Bay tributary area. Thus, the County's enactment had to be pursuant to the public general law. Appellants argue that, while that may be so, the particular action involved, the re-designation of the property that is the subject of the ordinances, is a zoning matter. We disagree. The County has a zoning ordinance that is separate and apart from its Critical Area program. The Critical Area designations overlay the zoning designations. Amendments to the County Critical Area program, even though they may share certain characteristics of zoning, are not zoning matters. Appellants argue the ordinances are tantamount to zoning actions because they only affect *where* growth allocation is utilized, not the criteria for growth allocation, which is fixed by law. This cuts too fine. As previously explained, the actions in question were not initiated without a relevant prior history. The actions were not local actions taken pursuant to a program adopted under home rule.

 The classification of legislative action as general or local is based on "subject matter and substance and not merely on form," *Cole v. Secretary of State*, 249 Md. 425, 433, 240 A.2d 272 (1968), and is determined by applying "settled legal principles to the facts of particular cases." *Dasch v. Jackson*, 170 Md. 251, 260, 183 A. 534 (1936). Enactments that apply to a single subdivision of the state regarding a subject of local import are considered local laws. *See Tyma v. Montgomery County*, 369 Md. 497, 507, 801 A.2d 148, 154 (2002) (citing *Steimel v. Bd. of Election Supervisors of Prince George's County*, 278 Md. 1, 5, 357 A.2d 386 (1976); and *Norris v. Mayor and City Council of Baltimore*, 172 Md. 667, 192 A. 531, 537 (1937)). Even an enactment that appears local in nature is a general law if it affects the interests of more than one geographical subdivision or the entire state. *See*

*Cole*, 249 Md. at 434–35, 240 A.2d 272 (citations omitted) ("The rationale ... lies in the concept that while the immediate objective sought to be achieved was local in character, the statutes indirectly affected matters of significant interest to the entire state: *i.e.*, regulation of elections, control of natural resources, and protection of state revenues derived from licenses.") (footnote omitted). The fact that the County's actions followed standard home rule procedures does not mean that the original authorization for the action was the home rule power. The actions were pursuant to, were affected by, and had an effect on, the entire State Critical Area Program.

Our conclusion is not inconsistent with our reading of Article XI–F. "Public local laws" within the meaning of that article appears to include certain local enactments and certain enactments by the General Assembly. The referendum provision is applicable only to enactments by a county, and is not applicable to all such enactments.

In Article XI–F, section 1, the definition of "public local law" expressly excludes charters and certain categories of legislative action. Exclusions (i) and (ii) appear to be unnecessary because charters of municipal corporations and the laws and charters of jurisdictions formed under Article XI–A are not included within the lead-in definition ("public local law means a law applicable to ... a code county"). The theme of the exclusions in (iii) and (iv), and we believe in (v), is that enactments by the General Assembly and local enactments pursuant to specific General Assembly authorization (without express reference to referenda) are not subject to local referenda.

It is possible that "public local law" in Article XI–F, section 1(2)(v), was intended to mean public local law as used in Article XI–A, that is, a public local law enacted by the General Assembly, when it is permitted to enact such a law. If the General Assembly extended specific authorization to a local jurisdiction by enactment of a public local law and did not expressly provide for a local referendum, a referendum would not be available. That is entirely consistent with our conclu-

sion that when the General Assembly enacts a public general law and mandates compliance with it, enactments by a local jurisdiction pursuant to that mandate and not pursuant to its home rule powers, are not subject to the local referendum provision in Article XI–F.

If "public local law" within the meaning of section 1(2)(v) includes all enactments, the fact remains beyond question that not all local enactments are subject to local referenda. Regardless of what it may mean in other settings and considering the relevant provisions in context, we interpret the word "ordinances" as used in section 1(2)(v), as including the ordinances in question because they were enacted pursuant to a public general law, and they are not purely local in origin or effect. We have already discussed their origin. Any change to the County's Critical Area program has a potential effect on the entire Critical Area. Additionally, if we accepted appellants' comparison to zoning, the re-designation of specific properties, rather than of all properties in the County, would probably be an administrative, not a legislative, act.

For the reasons stated above, we affirm the decision of the circuit court.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**