*Waterman Family Limited Partnership, et al v. Kathleen B. Boomer, et al.*
No. 18, September Term 2017

**Local Government Law – Code Home Rule Counties – Repeal or Rescission of Previously Enacted Measure.** Under Maryland Code, Local Government Article §4-416, a municipality that annexes land may not allow development of that land for a use "substantially different" than permitted by the previous county zoning for a period of five years, unless the county expressly approves the rezoning. A code home rule county has authority to repeal a resolution that gave the county's assent, for purposes of §4-416, to a municipality's rezoning of recently annexed land, unless third party rights in the rezoning have already vested.

IN THE COURT OF APPEALS
OF MARYLAND

No. 18

September Term, 2017

_____

WATERMAN FAMILY LIMITED
PARTNERSHIP, ET AL.

V.

KATHLEEN B. BOOMER, ET AL.

_____

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Rodowsky, Lawrence F.
(Senior Judge, Specially
Assigned),

JJ.

_____

Opinion by McDonald, J.

_____

Filed: November 20, 2017

Among the powers conferred on a Maryland municipality by the General Assembly pursuant to the State Constitution are the power to zone land within the municipality's boundaries and the power to enlarge those boundaries by annexing contiguous land. However, when a municipality exercises those powers together, there is a constraint. A State statute delays for five years the rezoning of annexed land for a use "substantially different" from that allowed by the land's prior county zoning classification – unless the county approves the municipality's reclassification of the annexed property before the expiration of the five-year period.

Petitioner Waterman Family Limited Partnership ("Waterman") asked the Town Commissioners of Queenstown ("the Town"), also a Petitioner, to annex farm land owned by Waterman adjacent to Queenstown in Queen Anne's County. At the same time, Waterman asked the Town to rezone the annexed land for purposes of a long planned development. The Town acceded to those requests. In order to make the new zoning effective sooner rather than later, the Town sought the County's approval of the new zoning classification. Certain nearby property owners, including Respondents Kathleen B. Boomer, Marie J. McNurlan, Paul A. McNurlan, Stacy L. Swartwood, and the Queen Anne's Conservation Association (collectively "QACA"), opposed the effort to obtain the County's approval of the new zoning.

At the same time, the County government happened to be in a period of transition as a result of the November 2014 election. The outgoing Board of County Commissioners – the County's governing body – narrowly approved the Town's rezoning in late November

2014. Two weeks later, the newly installed Board of County Commissioners rescinded that approval.

Disappointed, Waterman and the Town instituted legal action against the County. QACA joined the fray in defense of the County's rescission of its initial approval. Waterman's challenge raised a question of first impression: May a county rescind its approval of a municipality's rezoning of annexed land?

The Circuit Court for Queen Anne's County said "no." The Court of Special Appeals said "yes." For the reasons set forth in this opinion, we agree with the Court of Special Appeals.

# I

## Background

### A. *Rezoning Land After Municipal Annexation*

1. Municipal Zoning

The General Assembly has authorized municipalities in Maryland to exercise zoning authority over land within their respective jurisdictions. Maryland Code, Local Government Article ("LG") §5-213; *see also* Maryland Code, Land Use Article ("LU"), §1-101(g) (definition of "legislative body" includes governing body of municipality), §4-101 *et seq*. (authorizing legislative body to exercise zoning powers).

2. Municipal Annexation

State law allows a municipality to annex unincorporated land contiguous to the municipality's boundaries if certain procedures are followed. LG §4-401 *et seq*. A

2

proposal to annex land may be initiated by the legislative body of the municipality or by residents or owners of the land in question. LG §§4-403, 4-404.

3. Rezoning of Annexed Land

It is generally the case that unincorporated land annexed by a municipality will already have been subject to county zoning. State law temporarily limits the rezoning and development of such land after annexation by a municipality. In particular, for a period of time the county retains some say over whether and when the land may be rezoned or developed in a way that allows for a substantially higher density or different use than that allowed by the county zoning classification that applied to the land prior to annexation. That constraint is set forth in LG §4-416, which provides in pertinent part:

(a) *Existing municipal authority*. – (1) Notwithstanding [a provision of the Local Government Article that limits the extent of municipal authority over planning, subdivision, and zoning] . . . if an area is annexed to a municipality that has planning and zoning authority at the time of annexation, the municipality shall have exclusive jurisdiction over planning, subdivision control, and zoning in the area annexed.

*        *        *        *

(b) *Different land use or density*. – Without the express approval of the county commissioners or county council of the county in which the municipality is located, for 5 years after an annexation by a municipality, the municipality may not allow development of the annexed land for land uses substantially different than the authorized use, or at a substantially higher density, not exceeding 50%, than could be granted for the proposed development, in accordance with the zoning classification of the county applicable at the time of the annexation.

(c) *County approval of zoning classification*. – Notwithstanding [a provision of the Land Use Article concerning amendment or repeal of a zoning classification] and if the county expressly approves, the municipality may place the annexed land in a zoning classification that

3

allows a land use or density different from the land use or density specified in the zoning classification of the county or agency with planning and zoning jurisdiction over the land prior to its annexation applicable at the time of the annexation.

4. Summary

The principles incorporated in the statute can be summarized as follows:

● Municipality's exclusive jurisdiction – As a general rule, a municipality that has planning and zoning authority has exclusive jurisdiction over planning, zoning and subdivision control in any area that the municipality annexes.

● Five-year delay of rezoning – The exclusive authority of the municipality is subject to the proviso that, for a period of five years after annexation, the municipality may not allow development of the annexed land for uses "substantially different" from that authorized under the county zoning applicable to the property prior to annexation. In sum, municipal rezoning of annexed land may be subject to a five-year delay.

● County waiver of delay – That proviso, however, is subject to a further proviso. The county – *i.e.*, the county commissioners or the county council, as the case may be – may give "express approval" for the new municipal zoning before the five-year period expires. This approval is sometimes referred to as a county "waiver" of the five-year delay.

This case raises the question whether a county that waives the five-year delay by giving express approval may rescind that waiver before any development has been undertaken in the annexed area.

4

### B.    *Facts and Legal Proceedings*

#### 1.  The Property

Waterman owns approximately 148 acres of land, known as Wheatlands Farm, located immediately south of Route 50 in Queen Anne's County.  The property is across Route 50 from a commercial development known as the Queenstown Outlets.  Before the events that gave rise to this case, the property was zoned CS ("Countryside") by the County – a designation that permits agricultural and low density residential uses.

#### 2.  Annexation and Town Rezoning of the Property

On June 25, 2014, Waterman submitted a petition to the Town to annex the Wheatlands Farm property to the Town.  At the same time, Waterman asked the Town to zone the property PRC ("Planned Regional Commercial") under the Town zoning ordinance.  A month later, on July 23, 2014, a proposed annexation resolution and a proposed zoning ordinance were introduced before the Town Commissioners.  The Commissioners referred both proposals to the Town's Planning Commission for its recommendations.

The Town Planning Commission held two public hearings, concluded that the annexation and proposed zoning were consistent with the Town plan, and recommended approval to the Town Commissioners.[1]

---

[1] The annexation of this property to the Town and the PRC zoning classification were contemplated in the comprehensive plans of both the Town and the County.

Following a public hearing on the proposals on September 24, 2014, the Town Commissioners voted unanimously to annex the property. A month later, on October 22, 2014, they held a second hearing on the rezoning proposal. On November 12, 2014, the Town Commissioners approved the rezoning.

It is undisputed that the Town's PRC zoning classification is "substantially different" from the County CS classification and allows for a "substantially higher density" than the CS classification. Accordingly, under LG §4-416(b), the property could not be developed with that higher density within five years after annexation, unless the County gave its express approval to the new zoning classification. In light of this requirement, the Town Commissioners made the effectiveness of the rezoning ordinance contingent in part on the County's approval of the rezoning.[2]

3. County Resolutions Related to the Rezoning

During the summer of 2014, while the annexation and rezoning proposals were pending in the Town, the Town Commissioners asked the County Commissioners to grant express approval of the Town's rezoning of the property upon annexation. The County Commissioners referred the request to the County Planning Commission, which recommended approval.

---

[2] The ordinance provided that the PRC zoning designation of the Waterman property would become effective as of the earlier of (1) the County's approval of the rezoning or (2) five years from the date of the Town's annexation of the property.

In the meantime, as a result of the election held on November 4, 2014, there was a significant turnover in the composition of the County governing body, with four of the five seats to be occupied by new Commissioners.

On November 25, 2014, the outgoing County Commissioners conducted a brief hearing and passed, by a 3-2 vote, County Resolution 14-31, which gave express approval for the Town's rezoning of the annexed Waterman property.

On December 2, 2014, the newly elected County Commissioners took office. One week later, on December 9, the newly elected County Commissioners conducted a hearing and passed County Resolution 14-33, *rescinding* the resolution that their predecessors had passed two weeks earlier to approve the rezoning. The rescinding resolution noted that no site plan or other indication of the intended development had been provided to the County and stated that the County Commissioners wished to review the planned development of the property and its impact "in terms of traffic, population growth, infrastructure, schools, and the environment…."

4. Litigation over County Resolution 14-33

One month later, on January 7, 2015, in response to County Resolution 14-33 rescinding the County's approval of the rezoning, Waterman filed an action styled as a "Petition for Judicial Review and Writ of Administrative Mandamus" in the Circuit Court for Queen Anne's County. Waterman thus invoked alternative routes of judicial review of administrative action pursuant to Maryland Rule 7-201 *et seq*. and Maryland Rule 7-401 *et seq*. The Town subsequently joined that petition. QACA filed a notice of its intention to

7

participate in the judicial review proceeding.[3]  Waterman later also filed a declaratory

judgment action against the County in which it asked the Circuit Court to declare County

Resolution 14-33 – the resolution rescinding approval – to be void.  Waterman's two

actions were consolidated in the Circuit Court.

Waterman, the Town, and the County pursued an effort to settle the case without

success (QACA was apparently excluded from those discussions).  The parties then filed

cross motions for summary judgment.

After hearing legal argument, the Circuit Court held that the County Commissioners

had "no statutory right of reconsideration" once the County had granted express approval

waiving the five-year delay under LG §4-416.  On July 23, 2015, the Circuit Court issued

a declaratory judgment that County Resolution 14-33 – the resolution rescinding approval

– had "no legal force and effect."[4]  The Circuit Court denied the County's motion for

reconsideration, which QACA had joined.

---

[3] In the Circuit Court, QACA indicated that it had planned to file an action challenging the County Resolution 14-31 – the first resolution approving the rezoning – but decided not to pursue such an action after the newly elected County Commissioners rescinded that resolution before the deadline for QACA to file such an action had expired.

[4] The Circuit Court ultimately also issued an order granting the relief sought in Waterman's petition for judicial review and administrative mandamus and denying the contrary requests for relief made by QACA.  In its opinion, the Circuit Court noted that the parties disputed whether the court had authority to resolve the case as a matter of judicial review of administrative action, but opined that it clearly had authority to assess the validity of the second County resolution under the Declaratory Judgments Act, Maryland Code, Courts & Judicial Proceedings Article, §3-401 *et seq*.  Before us, the parties have treated the matter as a declaratory judgment action rather than as judicial review of administrative action.  We shall do the same.

8

QACA and the County appealed.[5]  The Court of Special Appeals reversed the Circuit Court's judgment. *Boomer v. Waterman Family LP*, 232 Md. App. 1 (2017).  The intermediate appellate court held that, while LG §4-416 itself does not explicitly provide that a county may rescind approval of a new zoning classification of land recently annexed by a municipality, the Maryland Constitution generally authorizes the county commissioners of a code home rule county to repeal a public local law by resolution, as occurred here, and that a county ordinarily has inherent authority to rescind a measure, absent the vesting of rights based on that measure.

Waterman and the Town filed a petition for a writ of *certiorari*, which we granted to consider whether the County had authority to rescind the initial resolution approving the rezoning.

## II

## Discussion

### A. *Standard of Review*

The Circuit Court issued its decision on the basis of cross motions for summary judgment.  A case may be resolved on summary judgment when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law.  Maryland Rule 2-501(f).  There is general agreement in this case that no material facts are in dispute and that the issue before us is purely legal.  Accordingly, we review that legal issue without

---

[5] The County later dismissed its own appeal.

9

according any special deference to the conclusions of the Circuit Court or the Court of Special Appeals. *See Mathews v. Cassidy Turley Maryland, Inc.,* 435 Md. 584, 598 (2013).

**B.** ***Whether a County May Rescind a Resolution Approving Municipal Rezoning of Annexed Land***

Waterman and the Town contend that the County, having given its express approval to the rezoning of the tract in County Resolution 14-31 on November 25, 2014, lacked authority to rescind that approval two weeks later. There is no contention that Waterman or the Town took any action in reliance on County Resolution 14-31 during the two week interval before the new Board of County Commissioners rescinded it. Thus, the question is whether the County generally has the power to rescind such an action.[6]

*LG §4-416*

As Waterman and the Town point out, nothing in LG §4-416 authorizes a county to rescind its approval once it is given. It is true that the statute does not explicitly address whether a county may withdraw its approval of a municipal rezoning of recently-annexed land. It is equally true, however, that the statute does not address whether a county that initially denies approval may later reverse that determination and grant approval. Waterman and the Town take the position that a county may do the latter – that is, approve

---

[6] If Waterman had taken action to develop the property in accordance with the new zoning classification during the interval between the approving resolution (County Resolution 14-31) and the rescinding resolution (County Resolution 14-33) there might be an issue as to whether Waterman had acquired vested rights in the new zoning classification and whether the County would be constitutionally barred from rescinding its approval. *See Prince George's County v. Sunrise Development Limited Partnership*, 330 Md. 297 (1993). That question is not before us.

10

a rezoning after initially declining to do so.  In their view, the statute is a one-way ratchet: Approval, once given, may not be withdrawn.  Once denied, however, it may later be given. But the text of the statute provides no support for this view.[7]  It is simply silent.

A review of the extant legislative history of the statute is unenlightening on this question.  The key provisions of the statute were enacted before the General Assembly began to retain bill files in 1976 and thus we do not have the benefit of the types of legislative materials that are available for more recent legislation.  In *Mayor and Council of Rockville v. Rylyns Enterprises, Inc.*, 372 Md. 514, 548-61 (2002), Judge Harrell provided a comprehensive history of the enactment of the key provisions that now make up LG §4-416, prior to their 2013 recodification in the Local Government Article.  We need not repeat all of that analysis, but note only the critical junctures in the development of the statute that relate to the question before us.

---

[7] Waterman and the Town argue that allowing a County to rescind approval of a rezoning would offend the "exclusive jurisdiction" over planning, subdivision control, and zoning that subsection (a) of the statute confers on the municipality.  They suggest that such exclusive jurisdiction is triggered by county approval of the rezoning and, once triggered, cannot be retracted.  This is a misreading of the statute.  Under the statute, the "exclusive jurisdiction" of the municipality is not activated by county action.  Rather, it is a consequence of the municipality's action in annexing the land.  But it is also qualified by subsections (b) and (c) of the statute for a five-year period following annexation.

Waterman and the Town suggest that allowing a County to rescind approval is an "illogical" reading of the statute because rescission could effectively change the zoning of the property after a developer had obtained certain approvals for the development (but presumably before acquiring vested rights in the zoning classification).  But it is no more illogical than the authority that the Town itself has to change the zoning classification before the developer has acquired a vested right in the zoning.

11

In 1954, the State Constitution was amended to provide for municipal home rule. Chapter 53, Laws of Maryland 1954, ratified November 2, 1954 (adding Article XI-E to the Maryland Constitution). To implement municipal home rule, the General Assembly enacted various provisions the following year that were codified in Article 23A of the Maryland Code. Chapter 423, Laws of Maryland 1955. Included among those enactments were certain provisions concerning annexation and municipal zoning that appeared in §§9 and 19 of Article 23A. Two years later, the General Assembly provided that if a municipality had zoning power – not all municipalities had such power at that time – the municipality would have exclusive zoning authority over land that it annexed. Chapter 197, Laws of Maryland 1957. In *Rylyns,* Judge Harrell referred to this as the "highwater mark" of municipal power "with respect to the initial zoning of annexed lands." *Rylyns,* 372 Md. at 557; *see also Prince George's County v. Mayor and City Council of Laurel,* 262 Md. 171, 182-83 (1971); *Beshore v. Town of Bel Air,* 237 Md. 398, 410-11 (1965).

The tide receded from that highwater mark 14 years later when the Legislature decided that a municipality should temporarily share with the county its otherwise exclusive zoning authority over annexed land. In 1971, the General Assembly amended Article 23A, §9(c) to delay the effectiveness of municipal rezoning of annexed land for a period of five years when the new zoning classification would permit a land use "substantially different" from that specified in the county plan prior to annexation. Chapter 116, Laws of Maryland 1971. As a result, municipal "autonomy [with respect to the initial zoning of annexed land] ceased." *Rylyns,* 372 Md. at 557; *see also Northeast Plaza Associates v. Town of North East,* 310 Md. 20, 28-29 (1987). A major objective of this

provision was to "preserve the integrity" of the county master plan by delaying a substantial change in zoning for the annexed area that "might well be disruptive to the planning for the surrounding areas." *Maryland-National Capital Park and Planning Commission v. Mayor and Council of Rockville*, 272 Md. 550, 561 (1974) (upholding constitutionality of law enacting the five-year delay).

Four years later, the Legislature decided to add some flexibility to the statute. In 1975, the General Assembly again amended Article 23A, §9(c), this time to allow the five-year delay to be truncated with the county's assent. The amendment provided that a county could waive the five-year delay by expressly approving the new municipal zoning before the expiration of the five-year period. Chapter 613, Laws of Maryland 1975.

The Legislature subsequently modified these provisions in various respects, but the key components of the statute for our purposes – placing exclusive zoning power in the municipality, making new zoning that allows a substantially different use subject to a five-year delay, and allowing for a county waiver of that delay – have remained essentially unchanged since the mid-1970s. As is evident, this history does not reveal a legislative intent as to whether or not county approval, once given, may be rescinded.[8] In 2013, these

---

[8] Waterman and the Town argue that a 2006 amendment of the predecessor statute somehow supports their view of LG §4-416. Chapter 381, Laws of Maryland 2006. Among other things, the 2006 amendment amended Article 23A, §9(c) to provide a more specific description of the kind of "substantially different use" permitted by a new municipal zoning classification that would trigger the five-year delay under the statute. Nothing in that amendment, or its legislative history, supports the idea that the statute operates as a one-way ratchet under which a county may grant approval previously withheld, but not rescind approval previously given.

provisions were recodified without substantive change as §4-416 of the new Local

Government Article. Chapter 119, Laws of Maryland 2013.

Thus, neither the text of LG §4-416, nor its legislative history, indicates that the

General Assembly intended to preclude a county from exercising whatever authority the

county may have under existing law to rescind an action taken by its governing body. To

decide whether a county may withdraw approval of municipal rezoning of annexed land,

we thus consider the general authority of a county governing body to reconsider its actions.

*Common Law Authority*

As a general rule, the governing body of a local government "has the right to

reconsider its actions and ordinances, and adopt a measure or ordinance that has previously

been defeated or rescind one that has been previously adopted before the rights of third

parties have vested." *Del Maso v. Board of County Commissioners*, 182 Md. 200, 206-7

(1943);[9] *see also* 4 McQuillin, Municipal Corporations, §§13.70, 13.72. This general

principle is related to the idea that a legislative body ordinarily lacks authority to restrict

the legislative activities of its successors. *State v. Fisher*, 204 Md. 307, 315 (1953) ("One

legislature cannot prohibit repeal or modification by its successors, even where it purports

to do so"); *see also Nordheimer v. Montgomery County*, 307 Md. 85, 101 (1986). Were it

---

[9] Waterman and the Town attempt to distinguish *Dal Maso*, arguing that it concerned a "zoning action" by a local government while, in their view, the County resolutions in this case do not. However, as noted in the text, the principle stated in *Dal Maso* is longstanding and widely applicable in the law regardless of whether or not the particular legislative action is called a "zoning action."

14

otherwise, legislative action would be frozen in time with local officials unable to react to changed circumstances or to pursue policies presently preferred over those previously adopted. The general power of a governing body to rescind a prior law or policy on a matter subject to its jurisdiction may be constrained in particular circumstances, as when a party has acquired a vested right in the governing body's prior policy decision.[10] Absent such circumstances, the governing body retains the option of changing its mind.

Thus, a county would ordinarily have authority to rescind its action giving assent – or one denying assent – for a municipality's rezoning of recently annexed land. That is true regardless of whether that authority is explicitly reiterated in LG §4-416. As indicated above, there is no indication in the statute that the General Assembly intended to trump the general principle that a county governing body may rescind a prior action.

*Article XI-F of the Maryland Constitution*

The parties have focused much of their attention in this case on certain provisions of Article XI-F of the Maryland Constitution, which authorizes counties to adopt code home rule. Those provisions authorize a code home rule county, such as Queen Anne's County, to "enact, amend, or repeal a public local law of that county by a resolution of the board of county commissioners." Maryland Constitution, Article XI-F, §6;[11] *see also*

---

[10] *See* footnote 6 above.

[11] That section further authorizes the General Assembly to "amplify [its] provisions by general law in any manner not inconsistent with … Article [XI-F]." Maryland Constitution, Article XI-F, §6. None of the parties has suggested that the General

15

Article XI-F, §3 ("a code county may enact, amend, or repeal a public local law of that county…"); §10 (later enacted public local law prevails over previously enacted public local law). To the extent that they concern amendment or repeal of a public local law, these provisions simply reiterate the common law principle described in the previous section in the particular context of a county that has transitioned to code home rule. In doing so, these provisions of the State Constitution make clear that the governing body of a county that has adopted code home rule has authority not only to repeal or amend its own enactments, but also to modify or repeal public local laws enacted for that county prior to adoption of home rule by a different legislative body – the General Assembly. *See* 62 *Opinions of the Attorney General* 275 (1977).

Much of the debate in this case has focused on whether County Resolution 14-31 granting express approval to the rezoning was a "public local law" of Queen Anne's County that falls within the purview of Article XI-F, §6. In distinguishing public local laws of a county from public general laws, this Court has focused on the substance of the law more than its form. *Cole v. Secretary of State*, 249 Md. 425, 433 (1968). Necessarily, a public local law of a county applies only in that county, although the fact that a measure applies only in a single county is not by itself determinative; a law that applies in a single county may nonetheless be a public general law when it "affects the interests of the whole state." *Tyma v. Montgomery County*, 369 Md. 497, 507 (2002); *see also Kent Island*

Assembly has "amplified" the procedures for rescission by a code county in a way pertinent to this case.

16

*Defense League, LLC v. Queen Anne's County Board of Elections,* 145 Md. App. 684, 693-94 (2002) (county ordinance classifying areas for purposes of State Chesapeake Bay Critical Area Law was not a public local law as its actions "were affected by, and had an effect on, the entire State Critical Area Program."). The distinction between a public local law and a public general law is based on whether the provision "pertains only to a subject of local import" or rather deals with a subject "of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Tyma*, 369 Md. at 507-8 (internal quotation marks and citations omitted).

Waterman and the Town suggest that the two resolutions do not qualify as public local laws because they affect more than one political subdivision – *i.e.*, the County and the Town. [12] However, in distinguishing public local laws of a county from public general laws, the State Constitution generally regards counties (and Baltimore City) as the relevant local jurisdictions. *Cf.* Maryland Constitution, Article XI-A, §4 (distinguishing "public local law" of charter home rule county from a public general law and defining "geographical sub-division" to mean a county or Baltimore City). Moreover, in this particular context, the General Assembly has, by means of LG §4-416, made the timing

---

[12] In their brief, Waterman and the Town also argue that the two resolutions do not qualify as public local laws because the County failed to follow certain procedures set forth in LG §9-301 *et seq.* As best we can tell, this argument was not raised before either of the courts below and the record does not otherwise address this issue. We decline to attempt to resolve this question at this juncture.

17

and effectiveness of a municipal zoning classification explicitly contingent on the assent of the county within which the annexed land lies.

Finally, Waterman and the Town argue that we should interpret "public local law" for purposes of Article XI-F differently from other contexts because Article XI-F contains its own definition of that phrase. "Public local law" is defined as "a law applicable to the incorporation, organization, or government of a code county and contained in the county's code of public local laws." Article XI-F, §1.[13] While this has been characterized as a "unique" definition of "public local law," detailed examinations of the history of the code home rule provisions of the Constitution have concluded that those provisions were designed to provide a broad grant of legislative power to code home rule counties concerning all matters of local concern. *See* 62 *Opinions of the Attorney General*, 275, 277, 290-94 (1977); M. Peter Moser, *County Home Rule – Sharing the State's Legislative Power with Maryland Counties*, 28 Md. L. Rev. 327, 336-38 & n. 34 (1968).

Resolution 14-31 applied to Wheatlands Farm, land wholly within Queen Anne's County; the resolution did not concern any other county. As a law concerning the timetable for a change of zoning of that land, Resolution 14-31 concerned a matter of local import to Queen Anne's County. Thus, were it necessary to decide this question to resolve this case,

---

[13] Specifically excluded from this definition are "(i) the charters of municipal corporations under Article 11E of this Constitution, (ii) the laws or charters of counties under Article 11A of this Constitution, (iii) laws, whether or not Statewide in application, in the code of public general laws, (iv) laws which apply to more than one county, and (v) ordinances and resolutions of the county government enacted under public local laws." Article XI-F, §1. No contention is made that any of these specific exclusions apply here.

we would be inclined to agree with the Court of Special Appeals that County Resolution 14-31 was a public local law of Queen Anne's County.

In any event, whether or not the resolutions fit the definition of "public local law" under Article XI-F, the County Commissioners had common law authority to rescind County Resolution 14-31. Moreover, nothing in the State Constitution precludes the County Commissioners from rescinding a resolution previously adopted by that body or abrogates the common law principle.

*Summary*

Under the common law, the County Commissioners had authority to rescind their resolution assenting to the Town's rezoning of the recently annexed land before rights vested in that zoning classification. Nothing in LG §4-416 abrogated that authority. Moreover, consistent with this common law authority, the Maryland Constitution explicitly confers authority on a code home rule county like Queen Anne's County to repeal a public local law.

**III**

**Conclusion**

For the reasons set forth above, the County had authority to rescind its assent to the Town's rezoning of Wheatlands Farm in conjunction with the Town's annexation of that property. Accordingly, under LG §4-416(b), as well as the Town rezoning ordinance itself, the new zoning classification will not become effective until five years after annexation, unless the County should approve the rezoning in the interim.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT OF QUEEN ANNE'S COUNTY FOR ENTRY OF A DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PETITIONERS.**